ASSOCIATION OF INVESTMENT BROKERS, and Anthony W. Tedeschi, Petitioners,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

No. 81–1162.

United States Court of Appeals, District of Columbia Circuit.

Argued March 16, 1982.

Decided May 7, 1982.

Merrill J. Chapman, New York City, for petitioners.

Jacob H. Stillman, Associate Gen. Counsel, Washington, D. C., SEC, with whom Paul Gonson, Sol., Gilbert C. Miller, Attorney-Fellow, David A. Sirignano, Sp. Counsel, and Thomas P. Lemke, Atty., Washington, D. C., SEC, were on the brief, for respondent. Louis C. Whitsett, Atty., Washington, D. C., SEC, also entered an appearance for respondent.

Before BAZELON, Senior Circuit Judge, MIKVA and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The petition before us challenges compulsory arbitration in the securities industry under the rules of the New York Stock Exchange and other self-regulatory organizations as "adhesive," "ultra vires the [Securities Exchange] Act," "a classic group boycott," "a *per se* violation of antitrust law," and "a denial of due process." Brief for Petitioners at 16, 31, 40. Petitioners employ as the springboard for their attack a Securities and Exchange Commission action adopting revisions to a uniform application for securities industry registration. We hold that petitioners lack standing to challenge the agency action in question and that their plea for abrogation of compulsory arbitration rules in the securities industry is not properly before the court. We so decide despite an unelaborated order by a motions panel of this court denying the agency's motion to dismiss the petition for lack of standing. Such an order, we conclude, does not inhibit action by a merits panel.

## I.

In December 1980, the Securities and Exchange Commission (SEC or Commission) adopted revisions to Form U–4, the Uniform Application for Securities Industry Registration. Form U–4, a personnel form for individuals engaged in the securities

industry,[1] was initially adopted by the Commission in May 1975. The 1980 alterations were designed primarily to conform Form U–4 to provisions of the Securities Acts Amendments of 1975, Pub.L.No.94–29, 89 Stat. 97, a measure enacted after the SEC's original adoption of the form. The changes were also devised to facilitate use of the form in a computer system developed by the North American Securities Administrators Association, Inc. (NASAA) (the organization of state securities administrators) and the National Association of Securities Dealers, Inc. (NASD) (the self-regulatory organization encompassing most of the firms that operate in the over-the-counter market). See Securities Exchange Act Release No. 17388 (Dec. 24, 1980), 45 Fed.Reg. 84992.

Form U–4 is in general use throughout the securities industry. However, the SEC's direction concerning the use of U–4 is addressed solely to SECO ("SEC Only") broker-dealers, i.e., broker-dealers who are not members of the NASD and are therefore regulated directly by the Commission. See 17 C.F.R. § 240.15b8–1 (1981). Relatively few firms are in the SECO category.[2] The NASD, various stock exchanges including the New York Stock Exchange, Inc. (NYSE), and 46 of the 50 states require use of the form, but these entities are not instructed to do so by the SEC. The form was developed through a concurrent effort

principally of the Commission, the NASAA, the NYSE, the NASD, and other self-regulatory organizations.[3] The Commission believed that a uniform registration form would "enhanc[e] the flow within the securities industry of information needed for regulatory purposes while at the same time alleviating a substantial and particularly duplicative paperwork burden imposed on broker-dealers registered with more than one organization or state." Securities Exchange Act Release No. 11424, [1974–1975 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 80,176.[4]

The Association of Investment Brokers (AIB), a trade association of registered representatives, and Anthony W. Tedeschi, a vice-president of Drexel Burnham Lambert, Inc., a broker-dealer firm that is an NASD member, have petitioned for review of the Commission's December 1980 action adopting revisions to Form U–4. Petitioners concede that a uniform form is appropriate and beneficial to the securities industry, but object to three portions of Revised Form U–4. First and eclipsing all other concerns, petitioners seek elimination of a certification providing that applicants agree to arbitrate disputes with their employer or others to the extent required by the rules of the self-regulatory organizations with which they register.[5] Second, they object to a question asking whether the applicant has "ever been arrested or indicted" for certain

1. The form seeks information concerning the applicant's personal, educational, business, and residential history, and asks questions designed to ascertain whether the applicant has engaged in conduct that would disqualify him or her, by statute, from working in the securities industry in a position with functions that are not clerical or ministerial.

2. Petitioners' counsel estimated that approximately 5% of broker-dealers in the securities industry are SECO broker-dealers, i.e., broker-dealers directly registered with the Commission. Memorandum in Opposition to Respondent's Motion to Dismiss Petition for Review at 8.

3. See 15 U.S.C. § 78c(a)(26) (defining the term "self-regulatory organization" to mean "any national securities exchange, registered securities association, or registered clearing agency,

or [for specified purposes] the Municipal Securities Rulemaking Board").

4. See S.Rep.No.677, 93d Cong., 2d Sess. 3 (1974) (survival of small broker-dealers is threatened by "excessive, duplicative and overlapping paperwork and reporting requirements of the SEC and other self-regulatory organizations").

5. The certification reads:
I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the [self-regulatory] organizations with which I register, as indicated in Question 8. [Question 8 asks the applicant to mark the self-regulatory organizations and states with which the applicant is to be registered.]

crimes.[6] Finally, they challenge a provision stating that former employers and others who furnish information concerning the applicant to the entities with which the applicant is seeking to register are released from liability for furnishing such information.[7]

Compulsory arbitration became a feature of the rules of the NASD and other self-regulatory organizations before the advent of Form U–4 in 1975. It has been an NYSE rule since 1958.[8] Although Form U–4, as initially adopted, did not contain any reference to arbitration, applicants for registration with the NYSE were required to execute an addendum to U–4 agreeing to arbitrate disputes with their employers. The inquiry concerning arrests and indictments appeared in the original 1975 version of Form U–4 and was carried over to the 1980 version with no substantial change.

Earlier, the form the Commission employed for SECO broker-dealers contained a broader inquiry concerning arrests and indictments.[9] The provision in the 1980 revised form requiring applicants to waive liability with respect to information provided by former employers and others to the entity with which the applicant is registering is identical to the authorization and release provision in the 1975 version of Form U–4.[10]

Petitioners request the court "to remove the three objected-to items from U–4 and to effectuate the removal of compulsory arbitration rules from the securities industry." Brief for Petitioners at 58. It is evident from petitioners' impassioned briefs, and from the presentation at oral argument, that actions of the NYSE, the NASD, and other self-regulatory organizations, particularly, their compulsory arbitra-

---

**6.** Specifically, the inquiry is: Have you ever: been arrested or indicted for any felony or misdemeanor involving the purchase, sale or delivery of any security or commodity, or arising out of the conduct of the business of a broker, dealer, municipal securities dealer, fiduciary, investment company, investment advisor, underwriter, bank, trust company, insurance company or any other financial institution, or involving any crime in which violence or threats of violence against any person, dishonesty, wrongful taking of any property, or any manner of fraud was a factor, or involving conspiracy to commit any of the foregoing?

**7.** The legend on the application reads:
I authorize and request any and all of my former employers and any other person to furnish to the agency, jurisdiction or organization with which this application is being filed, or any agent acting on its behalf, any information they may have concerning my credit worthiness, character, ability, business activities, educational background, general reputation, together with, in the case of former employers, a history of my employment by them and the reasons for the termination thereof. Moreover, I hereby release each such employer and each such other person from any and all liability of whatever nature by reason of furnishing such information to the agency, jurisdiction or organization or any agent acting on its behalf.

**8.** Rule 347 of the NYSE, adopted in 1958, provides:
Any controversy between a registered representative and any member or member organization arising out of the employment or ter-

mination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.
2 NYSE Guide (CCH) ¶ 2347. Registered representatives agree to be bound by this rule pursuant to NYSE Rule 345.16, which provides that each prospective registered representative shall sign an agreement, on a form prescribed by the exchange, including a pledge to abide by, among other things, the exchange's rules. *Id.* ¶ 2345.16.

**9.** Form SECO–2, which the Commission used from 1965 to 1975, asked whether the applicant had "ever been the subject of any arrests, indictments or convictions for any felony or misdemeanor, except minor traffic offenses." The SEC has cautioned that the arrest inquiry "should not be interpreted to require or suggest that the fact of any arrest or conviction record is to be used as an absolute bar to employment." Securities Exchange Act Release No. 11604 (Aug. 25, 1975), 40 Fed.Reg. 40509, 40513.

**10.** *Cf.* Authorization & Release Form promulgated by the Committee on Admissions of the District of Columbia Court of Appeals, requiring applicants for admission to the Bar of the District of Columbia to "release, discharge, exonerate" the Committee on Admissions and "any person ... furnishing information [to the Committee] from any and all liability of every nature and kind arising out of the furnishing [of such] information."

tion rules, and not the SEC's action adopting Revised Form U–4, provide the *raison d'être* for the petition.[11] Petitioners charge the SEC with "default or neglect," but their principal fire is directed elsewhere. U–4, according to petitioners, "was devised and developed by the dominant self-regulatory entities in the securities industry"; "[t]he objected-to portions of 'U–4' were included solely at the behest of those entities—primarily the New York Stock Exchange, American Stock Exchange, and the National Association of Securities Dealers—and not by the federal regulatory agency." Brief for Petitioners at 4, 5. Time and again petitioners recite that the "bedrock issue" in this controversy is whether or not compulsory arbitration imposed by "the third party NYSE" is a group boycott, a per se violation of antitrust law, a denial of due process. *See, e.g., id.* at 22, 23, 27, 28, 31, 40, 57. Petitioners readily acknowledge that the SEC has "no arbitral forum or any rule regarding arbitration," *id.* at 5, so that the arbitration certification in Form U–4 is inoperative as to SECO broker-dealers, the only broker-dealers required by the Commission to use Form U–4.

## II.

As stated above, the SEC requires SECO broker-dealers to file Form U–4 and has no rules requiring others to file the form or calling for resort to arbitration by SECO broker-dealers and their employees. Indeed, the particular agency action petitioners challenge is simply an amendment to Commission rules which require registered brokers or dealers not members of a registered national securities association to file the revised form for associated persons of such brokers or dealers. Securities Exchange Act Release No. 17388, *supra.*

Although the Commission does not require brokers regulated by the NASD and other self-regulatory organizations to use Form U–4, those organizations, to achieve the benefits of uniformity in processing applications for employment, have elected to require members to use the form. NYSE and NASD rules mandate arbitration of employer-employee disputes, and did so, to the same extent as they do now, before the development of a uniform form under SEC auspices. The SEC, as petitioners recognize, "has never approved or reviewed the compulsory arbitration requirements of the self-regulatory organizations of the securities industry." Brief for Petitioners at 5.[12] To accommodate the self-regulatory organizations that require arbitration and to obviate the need for applicants registering with those organizations to complete papers beyond Form U–4, the SEC agreed to inclusion of the arbitration certification in the uniform form.

▮▮▮ Petitioner Tedeschi is not associated with a SECO broker-dealer. His affiliation is with a member of the NASD. Petitioner AIB does not assert that it has any SECO broker-dealer members. Thus, if revisions in Form U–4 "adversely affect" petitioners,[13] their grievance is appropriately

11. Few pages of petitioners' ponderous briefing are devoted to the arrest or indictment inquiry and release from liability provision. Petitioners do not complain of any adverse racial impact occasioned by the arrest question. *Cf. Gregory v. Litton Systems, Inc.,* 316 F.Supp. 401, 403 (C.D.Cal.1970), *aff'd in relevant part,* 472 F.2d 631 (9th Cir. 1972). These two items, it is noted, do not indicate new SEC decisions. As to arrests, the 1980 revision merely adds to the question in the original Form U–4 the words "or commodity" after the word "security," and "municipal securities dealer" after "broker, dealer." No change at all was made in the release from liability provision.

12. The two most relevant court decisions are not in harmony. *Compare Hope v. Superior Court,* 122 Cal.App.3d 147, 175 Cal.Rptr. 851 (1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1760, 71 L.Ed.2d 168 (1982) (agreement to arbitrate under NYSE rule is a contract of adhesion and NYSE procedures fail to meet minimum levels of integrity), *with Drayer v. Krasner,* 572 F.2d 348 (2d Cir.) (Friendly, J.), *cert. denied,* 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978) (rejecting antitrust attack on NYSE compulsory arbitration rule and attack on fairness of NYSE arbitration procedures).

13. Petitioners invoke our review authority pursuant to section 25(b)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78y(b)(1), which reads:

directed to the self-regulatory organizations that require them to use the form, not to the SEC, which directs only SECO broker-dealers to file U–4.

It is settled doctrine that a person seeking relief from an Article III court must establish an injury fairly traceable to the challenged conduct. The requisite causal connection may be satisfied by showing a "substantial likelihood" that the relief requested of the court will redress the claimed injury. *See Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 72–75, 98 S.Ct. 2620, 2630–2631, 57 L.Ed.2d 595 (1978); *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976).

Assuming that petitioners are injured by the employment of Form U–4 by reason of the 1980 revisions, a question we pretermit, they have failed to show that any such injury is fairly linked to the SEC rather than to the self-regulatory organizations. And, most critically, they have not established that any directive this court might issue to the Commission with respect to SEC employment of Form U–4 would redress their grievance. The self-regulatory organizations, not the SEC, require petitioners' use of Form U–4. Those entities

are not before the court, *cf. Simon,* 426 U.S. at 41, 96 S.Ct. at 1925, although it is their actions that directly give rise to petitioners' alleged injury. An order to the Commission concerning the form could require cancellation or modification of provisions for SECO broker-dealer filings but could not direct the self-regulatory organizations and the states to follow suit. Most persons associated with broker-dealers, including AIB members, register with those entities, and not with the SEC.

Of particular significance to the "bedrock issue" petitioners identify, the self-regulatory organizations' rules compelling arbitration antedated U–4. Petitioners do not allege, nor could they plausibly, that those rules were shaped or changed by the SEC's adoption of revisions to the uniform application. Nor does a petition to review the SEC's action in revising the form provide any basis for scrutiny of the self-regulatory organizations' compulsory arbitration rules. This court has no roving commission to initiate investigations into or abrogate rules that are not of the agency's making and on which the agency has taken no position. In sum, petitioners' briefs and arguments persuade us that any injury they may suffer cannot fairly be traced to the SEC's 1980 adoption of revisions to Form U–4 and that their grievance, which petitioners themselves attribute to action by "the dominant self-regulatory entities," [14] is not redressable in the confines of the instant petition for review of an SEC rule.

A person adversely affected by a rule of the Commission [promulgated pursuant to enumerated sections of the Act] may obtain review of [the] rule in the United States Court of Appeals for the circuit in which he resides or has his principal place of business or for the District of Columbia Circuit, by filing in such court, within sixty days after promulgation of the rule, a written petition requesting that the rule be set aside.

**14.** Brief for Petitioners at 4 (form "devised and developed by the dominant self-regulatory entities"), 5 (objected-to portions "included solely at behest of these entities"), 22 (question presented is: "Does the imposition of compulsory arbitration by a third party as a condition precedent to employment in the securities industry constitute a 'burden on competition?' "), 23 (self-regulatory organizations "have no right

... to include onerous conditions of employment"), 27 ("securities industry possesses the power to enforce compulsory arbitration by group boycott"), 28 ("group boycott by securities industry employers engineered through their ombudsman corporation, the NYSE, is violative of and against public policy as expressed in the federal antitrust laws"), 31 ("imposition by the third party NYSE ... of this employment requirement results in a classic group boycott—a *per se* violation of antitrust law"), 40 ("question is whether or not compulsory arbitration imposed ... by a third party is a denial of due process"), 43 ("SEC has not concerned itself with the arbitration rules and procedures promulgated by the various exchanges"), 56–57 ("NYSE-style arbitration is wrongfully promulgated and perpetuated").

## III.

■ In June 1981, the Commission filed a motion to dismiss the petition for review on the ground that, because petitioners are not connected with SECO firms, they have not been "adversely affected" by any action of the SEC within the meaning of the relevant review provision,[15] and thus lack standing to challenge the action of the Commission revising Form U–4 for use by SECO broker-dealers. This court, in September 1981, denied the SEC's motion in an unadorned order. The court's order states no more than that "the motion to dismiss is denied." Petitioners maintain that the law of the case doctrine binds us to proceed without reexamination of their standing. Reply Brief at 3–5.

Even if the issue did not implicate the limits of our authority to adjudicate,[16] we would reject petitioners' contention.[17] Motion papers frequently do not reveal the full dimensions of the question tendered.[18] Particularly when dispositive applications are made,[19] the litigant who seeks to stay in court is often accorded the generous benefit of doubt on a threshold point. With the clarification afforded by full briefing, the doubt may be removed, as it was in this case.

The parties might have had clearer notice if the order on the motion to dismiss had read, "denied without prejudice." But petitioners have not been disadvantaged, for we have fully considered their submissions in opposition to the SEC's motion to dismiss as well as their later arguments. To avoid misunderstanding by counsel and to clarify the court's approach, we state, with the approval of the full court, that a motions panel order simply denying a motion to dismiss without saying more is without prejudice to reexamination upon full briefing and argument of the case.[20]

15. *Supra* note 13.

16. Cf. *Potomac Passengers Ass'n v. Chesapeake & O. Ry.*, 520 F.2d 91, 95 n.22 (D.C.Cir. 1975) (law of the case doctrine does not foreclose on second appeal reconsideration of federal court's subject-matter jurisdiction); *Green v. Department of Commerce*, 618 F.2d 836, 839 n.9 (D.C.Cir.1980) (following *Potomac Passengers*, court dismissed an appeal, despite motion panel's earlier disposition, because the district court's order was not a final judgment).

17. In the interest of repose, this court generally adheres to a ruling made on a prior appeal, but recognizes that the law of the case doctrine does not limit the court's power and that the general policy is subject to exceptions. *See, e.g., Laffey v. Northwest Airlines, Inc.*, 642 F.2d 578, 585 -86 (D.C.Cir.1980). As Judge Learned Hand observed, law of the case "does not rigidly bind a court . . . but is only addressed to its good sense." *Higgins v. California Prune & Apricot Grower, Inc.*, 3 F.2d 896, 898 (2d Cir. 1924).

 For analysis by a leading commentator on preclusion principles, *see* Vestal, *Law of the Case: Single Suit Preclusion*, 1967 Utah L.Rev. 1. Professor Vestal points out that law of the case is a less imposing barrier to reexamination than is issue preclusion (collateral estoppel). The former relates to a case from which the court has not yet disassociated itself. The latter concerns a question necessarily decided in an action that has been terminated by a final judgment, at which point the strong expectation is "that the controversy is at an end." *Id.*

at 30. Professor Vestal also observes that while matters of discretion are prime candidates for application of law of the case, the doctrine has diminished force with respect to questions of the court's authority to adjudicate a controversy. *See id.* at 26–30.

18. Cf. *In re Multi-Piece Rim Products Liability Litigation*, 653 F.2d 671, 678 (D.C.Cir.1981) (court's obligation to consider anew "order whose premises were nowhere stated").

19. During the current court term grounds urged in support of motions to dismiss have included:

 (1) Jurisdiction lies in the District of Columbia courts.
 (2) Jurisdiction lies in the Supreme Court.
 (3) Jurisdiction lies initially in the district court.
 (4) A class action may not be initiated at this level.
 (5) Appellants have unclean hands.
 (6) The agency order is not ripe for review.
 (7) The petition for review was untimely filed.
 (8) The agency order is not final.
 (9) Petitioners lack standing.
 (10) The district court order is interlocutory.
 (11) The agency action is unreviewable.
 (12) The case has become moot.

20. *See Northwest Airlines, Inc. v. FAA*, 675 F.2d 1303, 1308 (D.C.Cir. 1982). We note that, absent disagreement, motions are generally determined by two judges and, except in extraordi-

## IV.

Petitioners' challenge to the Commission's adoption of revised Form U–4, we have held, cannot serve as springboard for an assault on the compulsory arbitration rules of the NYSE, the NASD, and other self-regulatory organizations. As the SEC points out, however,[21] both the Administrative Procedure Act and the Securities Exchange Act indicate an avenue petitioners might pursue to raise before the Commission their contentions concerning the alleged illegality of "NYSE-style arbitration." *See* Brief for Petitioners at 56. Petitioners may invite an SEC rulemaking directed to the arbitration requirements of the self-regulatory organizations.

Section 4(e) of the Administrative Procedure Act, 5 U.S.C. § 553(e), commands that "[e]ach agency shall give an interested person the right to petition for the issuance . . . of a rule." Section 6(a), 5 U.S.C. § 555(e), requires "prompt notice" in the event an agency denies such a petition. Further, section 6(a) directs that when a denial is not self-explanatory, "the notice shall be accompanied by a brief statement of the grounds for denial." Section 19(c) of the Securities Exchange Act, 15 U.S.C. § 78s(c), authorizes SEC rulemaking to abrogate or amend rules of self-regulatory organizations that do not conform to provisions of the Act, and Commission Rule 201.-4, 17 C.F.R. § 201.4, specifies the procedure for petitioning the SEC for rulemaking action.

Petitioners suggest it would be futile for them to place the compulsory arbitration matter squarely before the SEC in view of "decades" of Commission "default or neglect." Brief for Petitioners at 43, 56; *see* Reply Brief at 13. But this appellate forum does not have the large power petitioners suppose; the court, contrary to petitioners' extraordinary assertions, surely does not have authority to exercise "original jurisdiction" and fill any Commission created "vacuum" by addressing issues "*de novo*" to arrive at "a public interest decision." Brief for Petitioners at 55–56. We may, however, *review* agency action, including "an agency's denial of a rulemaking petition." *WWHT, Inc. v. FCC,* 656 F.2d 807, 809 (D.C.Cir.1981) (except when clear legislative intent is to negate review, "an agency's denial of a rulemaking petition is subject to judicial review," albeit "the scope of review of such a determination must, of necessity, be very narrow").

## CONCLUSION

Petitioners are not persons "adversely affected" by the Commission's adoption of revised Form U–4 and have chosen an inappropriate means to air their concerns about alleged unlawful conduct on the part of self-regulatory organizations in the securities industry. Their petition for review is accordingly

*Dismissed.*

---

nary circumstances, without oral argument. *See* D.C.Cir. Handbook of Practice and Internal Procedures 44–46 (1978).

**21.** Brief of Respondent at 21 n.23, 25.