## TURNER CONSTRUCTION COMPANY *v.* EPPOLITI, INC. (10350)

NORCOTT, LANDAU and HEIMAN, Js.

Argued April 6—decision released July 7, 1992

*Richard L. Abramson,* pro hac vice, with whom, on the brief, was *Stefan Underhill,* for the appellant (plaintiff).

*Allan J. Kleban,* with whom, on the brief, was *Ronald F. Ochsner,* for the appellee (defendant).

HEIMAN, J. Turner Construction Company (Turner), the plaintiff in this commercial dispute, appeals from the trial court's judgment compelling arbitration. It

claims that the trial court improperly (1) determined that the question of whether certain disputes between the parties are arbitrable must be answered by an arbitrator rather than by the court, (2) compelled it to arbitrate certain disputes that have been decided conclusively under the express terms of the contract, and (3) determined that the parties agreed to arbitrate certain disputes in the event that Turner unreasonably delayed issuing a written decision on them. We affirm the trial court's judgment.

The following undisputed facts are pertinent to our disposition of this case. In September, 1988, Turner entered into a contract with Yale University by which Turner agreed to construct the Center for Molecular Medicine/Sterling Power Plant. On August 1, 1989, Eppoliti, Inc. (Eppoliti), the defendant, entered into a subcontract with Turner under which Eppoliti agreed to perform masonry work on the project. The subcontract contains a dispute clause that provides a mechanism for resolving disagreements arising out of the subcontract. The dispute clause provides in pertinent part: "Any dispute arising at any time under this Subcontract which is not disposed of by agreement . . . or by submission of a joint claim by Turner and Subcontractor to Owner under Disputes Procedures set out in the Prime Contract, shall be decided in the first instance by Turner who shall reduce its decision to writing without unreasonable delay and mail or deliver three (3) copies thereof to the Subcontractor. The decision of Turner shall be final and conclusive unless, within thirty (30) days from the date of receipt hereof, the Subcontractor mails or delivers to Turner a written notice of rejection, in which event the decision of Turner shall not have further effect . . . and either party may have the dispute, and the subject matter thereof finally settled by arbitration, per section 7.9 of the General Conditions . . . . In the event that

Turner fails to make a decision as aforesaid on any dispute within thirty (30) days after having been requested to do so by the Subcontractor, then Turner shall no longer have the right to make such decision on the dispute . . . ." Section 7.9 of the general conditions is the section of the contract between Turner and Yale that provides for the arbitration of disputes.

During the course of the construction project, Eppoliti sought change orders from Turner granting Eppoliti additional compensation to cover the costs of winter weather protection, cold weather protection losses, animal room level production losses and wage increases. In January, 1990, Turner issued a change order for Eppoliti's furnishing winter weather protection. At a May 17, 1990 meeting, the parties agreed that Eppoliti would submit all of its unresolved requests for additional compensation to Turner in writing and that Turner would respond with a written decision on the requests. Eppoliti submitted unresolved claims for cold weather protection losses, animal room level production losses and wage increases by letter dated May 25, 1990. On June 22, 1990, Eppoliti received Turner's letter denying each claim. Eppoliti informed Turner of its disagreement with Turner's refusal to provide additional compensation by letter dated August 14, 1990.

Similarly, a dispute arose between the parties regarding Eppoliti's request for additional compensation for installing thru-wall flashing. The parties exchanged correspondence in which Eppoliti asserted its entitlement to additional compensation, Turner denied the request and Eppoliti expressed its disagreement with Turner's denial.

Eppoliti filed with the American Arbitration Association (association) a demand for arbitration of the aforementioned claims as well as additional claims not

submitted to Turner previously. Turner requested the association to dismiss the arbitration due to Eppoliti's failure to satisfy the preconditions to arbitration contained in the parties' subcontract. The association responded that it would continue to administer the arbitration absent a court order staying the arbitration proceedings.

Turner then filed a motion for a preliminary injunction in the Superior Court, seeking to enjoin the arbitration proceedings. Eppoliti responded by filing a motion to compel arbitration, pursuant to General Statutes § 52-410. The trial court, after conducting an evidentiary hearing, rendered judgment temporarily enjoining Eppoliti from arbitrating those claims not submitted to Turner in the first instance. The trial court also rendered judgment granting Eppoliti's motion to compel arbitration of the remaining claims, finding that the parties clearly agreed to mandatory arbitration and that the arbitrator should determine whether the preconditions to arbitration have been satisfied. Turner appealed from the trial court's judgment compelling arbitration.

Turner claims that the trial court improperly determined that the question of whether certain disputes between the parties are arbitrable must be answered by an arbitrator rather than the court. We disagree.

The principles that govern our decision are well settled. "Arbitration is a creature of contract. It is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed. *Pratt, Read & Co.* v. *United Furniture Workers,* 136 Conn. 205, 209, 70 A.2d 120 [1949]." *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.,* 148 Conn. 192, 197, 169 A.2d 646 (1961). "Whether the parties have agreed to submit to arbitration not only the merits of

the dispute but the very question of arbitrability, as well, depends upon the intention manifested in the agreement they have made." Id; *Policemen's & Firemen's Retirement Board* v. *Sullivan*, 173 Conn. 1, 6, 376 A.2d 399 (1977); *Combustion Engineering, Inc.* v. *International Brotherhood of Boilermakers*, 15 Conn. App. 332, 333–34, 544 A.2d 256 (1988). "The intent to submit the question of arbitrability to an arbitrator may be demonstrated in an agreement by an express provision or by the use of broad terms." *Combustion Engineering, Inc.* v. *International Brotherhood of Boilermakers*, supra, 334. " '[T]he agreement between the parties remains the focal point for determining whether timeliness and notice requirements are matters for arbitration. *A. Sangivanni & Sons* v. *F. M. Floryan & Co.*, [158 Conn. 467, 471, 262 A.2d 159 (1969)].' [*Gary Excavating, Inc.* v. *North Haven*, 164 Conn. 119, 125, 318 A.2d 84 (1972)]." *East Hartford* v. *East Hartford Municipal Employees Union, Inc.*, 206 Conn. 643, 656, 539 A.2d 125 (1988). The proper construction of contract language is a question of fact, subject to our review under the "clearly erroneous" standard. *Barnard* v. *Barnard*, 214 Conn. 99, 109, 570 A.2d 690 (1990); *Zivic* v. *Zivic*, 26 Conn. App. 5, 7–8, 596 A.2d 475 (1991); *Lavigne* v. *Lavigne*, 3 Conn. App. 423, 427–28, 488 A.2d 1290 (1985).

Turner argues that because the dispute clause in the subcontract does not expressly authorize the arbitrator to decide the threshold question of arbitrability, the issue of arbitrability must be decided by the court. It further argues that because the arbitration clause of the parties' subcontract is not triggered unless and until there has been a timely demand for payment, a decision by Turner on the demand for payment and a rejection of Turner's decision, the parties did not agree to arbitrate the question of whether these preconditions to arbitration have been complied with.

The parties' intent to have the question of arbitrability decided by an arbitrator is reflected not in the express terms but in the broad language of the dispute clause of their subcontract. The clause provides, with exceptions not relevant here, for arbitration of "[a]ny dispute arising at any time out of [the] Subcontract . . . ." The subcontract contains no exclusionary language removing the question of arbitrability from the arbitrator's domain. See *Hartford* v. *Local 308,* 171 Conn. 420, 425, 370 A.2d 996 (1976); *Combustion Engineering, Inc.* v. *International Brotherhood of Boilermakers,* supra, 334–35. We cannot say that the trial court's finding that this language reveals the parties' intent to have the arbitrator determine whether the prerequisites to arbitration have been satisfied was clearly erroneous.

The remaining issues raised by Turner pertain to the trial court's alleged finding that certain disputes between the parties are in fact arbitrable. The trial court did not, however, make such a finding. The court merely found that the parties agreed to arbitrate certain disputes between them provided that the preconditions to arbitration, set forth in the subcontract, are complied with. Further, as we noted above, the trial court properly left to the arbitrator the question of whether the preconditions to arbitration have been satisfied. The trial court made no determination that the disputes in this case are in fact arbitrable. Turner's remaining claims are premised on its misinterpretation of the trial court's memorandum of decision and, as such, are not meritorious.

The judgment is affirmed.

In this opinion the other judges concurred.