[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR PERMANENT INJUNCTION
The plaintiff/employer, George Weiss Associates, Inc. (Weiss), has brought the present action seeking extraordinary relief enjoining the defendant/former employee, Michael Christiani (Christiani), from pursuing arbitration under the National Association of Securities Dealers (NASD) Code of Arbitration (the Code) until this court determines the arbitrability under the Code of the particular controversy at issue, namely employment disputes.
This matter comes before the court on the plaintiff's motion for a temporary injunction. Both parties, however, have stipulated in open court that any orders entering in this case be permanent rather than temporary. "A trial court may not sua sponte transform applications that request temporary injunctions into proceedings on the merits of issuance or denial of permanent injunctions." Doublewal Corp. v.Toffolon, 195 Conn. 384, 392, 488 A.2d 444 (1985). A court may transform a temporary injunction into a permanent injunction by the consent of the parties, Id.; Ebenstein v.Ebenstein, P.C. v. Smith Thibault Corp., 20 Conn. App. 23, 26, CT Page 1996563 A.2d 1044 (1989); or upon the motion of one of the parties. Dunham v. Dunham, 217 Conn. 24, 26-27, 584 A.2d 445
(1991). Thus the court proceeds to the merits of the plaintiff's claim, a full hearing having been held on February 14, 1995.
 I.
Christiani was hired by Weiss, a member of the NASD, as a stock trader and portfolio manager in January 1989. At that time Christiani signed a Uniform Application for Securities Industry Registration form (U-4) designating Weiss as his "firm" and stating the following:
 I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in item 10 as may be amended from time to time.
An examination of item 10 on the U-4 reveals an "X" signifying the NASD as the organization with which Christiani was registered. The Code constitutes the "rules" which govern NASD arbitration. Therefore, any disputes which arose between the parties must fall within the specific matters delineated in the Code in order to be arbitrable.
In June 1992, Christiani was discharged by Weiss. On or about October 11, 1994, Christiani filed a statement of claim with the Arbitration Department of the NASD, alleging that he is entitled to certain money damages based on his employment contract with Weiss, specifically an unpaid bonus valued by Christiani at $370,000. On January 6, 1995, Weiss filed the instant action, asserting that Christiani's claim constitutes an employment dispute, a species of claim not arbitrable under specific provisions of the Code.
At the center of this conflict is Code Section 1 ("Matters Eligible for Submission"), which, at the time of Christiani's termination in June 1992, read:
 "This Code of Arbitration Procedure is prescribed . . . for the arbitration of any CT Page 1997 dispute, claim, or controversy arising out of or in connection with the business of any member of [NASD] . . . (1) between or among members; (2) between or among members and public customers, or others; and (3) between or among members, registered clearing agencies . . . and participants, pledges, or other persons using the facilities of a registered clearing agency . . . .
This provision is to be examined in conjunction with Code Section 8 ("Required Submission"), as it read in June 1992:
 (a) Any dispute, claim, or controversy eligible for submission under [Section 1] between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of: (1) a member against another member; (2) a member against a person associated with a member or a person associated with a member against a member; and (3) a person associated with a member against a person associated with a member. . . .
Compared to explicit provisions in the arbitration codes of competing exchanges, such as the New York Stock Exchange (NYSE), which clearly authorize arbitration of employment disputes,[1] the NASD's Code, as it appeared in 1992, is hardly a model of clarity. Significantly, however, effective October 1, 1993, the NASD amended Code Sections 1 and 8 "to clarify
that employment-related disputes are arbitrable under the Code." Section 1 now reads:
 "This Code of Arbitration Procedure is prescribed . . . for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of [NASD], or arising out of the employment or termination of employment of associated person(s) with any member . . . (1) CT Page 1998 between or among members; (2) between or among members and associated persons; (3) between or among members or associated persons and public customers, or others; and (4) between or among members, registered clearing agencies . . . and participants, pledges, or other persons using the facilities of a registered clearing agency. . . .
Section 8 provides:
 (a) Any dispute, claim, or controversy eligible for submission under [Section 1] between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of associated person(s) by and with such member,
shall be arbitrated under this Code, at the instance of: (1) a member against another member; (2) a member against a person associated with a member or a person associated with a member against a member; and (3) a person associated with a member against a person associated with a member. . . .
Despite the "clarifying" nature of the 1993 amendments, disagreement remains among the various courts across the country which have considered whether the 1992 version of Code Section 1 authorizes — and consequently, whether Section 8 then requires — the arbitration of employment disputes.
 II.
The plaintiff's argument against arbitrability under the 1992 Code is based primarily on caselaw from the Seventh Circuit Court of Appeals, particularly Farrand v. LutheranBrotherhood, 993 F.2d 1253 (7th Cir. 1993); see also, e.g.,Kresock v. Bankers Trust Company, 21 F.3d 176 (7th Cir. 1994). In Farrand, the Seventh Circuit denied an employer's motion to compel arbitration of an age discrimination/employment dispute, finding that an interpretation of "or others" in Section 1, clause (2) which included "all persons" — CT Page 1999 including employees such as the defendant — would render subsequent provisions "surplus." Id., 1254-55. The court interpreted "or others" to apply to those "similar to preceding terms — here, perhaps, clients who for technical reasons cannot properly be called `public customers.'" Id.,
1255. The Seventh Circuit did acknowledge, however, that expansive interpretations of "or others," such as those advanced in the instant case, do "not exceed the bounds of reason." Id. However, citing the lack interpretive assistance from the NASD, and adhering to the doctrine which refuses to impose terms in arbitration agreements which refuses to impose terms not clearly agreed upon, the Seventh Circuit in Farrand
denied arbitration.
On petition for rehearing — and before the official adoption on October 1, 1993 of the Code amendments — theFarrand court was presented with several Code interpretations supporting arbitrability, among them: (1) an affidavit of an NASD vice-president asserting that "[t]he NASD has consistently taken the position that the Code requires arbitration of employment-related disputes"; and (2) documents heralding the explicit changes to the Code adopted later in 1993. Id., 1255, 56-57. Despite this evidence, the court held fast to its original decision, stating: "A change in the Code, rather than a strained interpretation of the current language, is the right way to proceed." Id., 1257.
The majority of jurisdictions to have considered this question, however, has found in favor of arbitrability, with several courts specifically rejecting Farrand and its limited progeny. See, e.g., Strappes Group, Inc. v. Seidle, 1993 WL 443926, 4 (D. Mass. 1993) ("[Farrand's] holding and reasoning . . . are of questionable validity and should not be followed."). Various and compelling arguments have been advanced. Some courts have invoked the national policy favoring arbitration in the face of ambiguity, holding, in one instance, that "when construing ambiguous arbitration agreements, courts are to resolve all doubts in favor of arbitrability." Id., 5; see also Kidd v. Equitable LifeAssurance Society of the United States, 32 F.3d 516, 519 (11th Cir. 1994); O'Donnell v. First Investors Corp., 1995 U.S. Dist. LEXIS 387, 6-7 (S.D.N.Y. 1995). Including employees among "associated" persons, one judge, for example, found the following Code interpretation reasonable: CT Page 2000
 Although section 1 of the NASD Code does not refer to associated persons, section 8, clause (2) provides for arbitration of disputes at the instance of "a member against a person associated with a member or a person associated with a member against a member." This provision would be rendered meaningless if section 1, clause (2) which provides for arbitration "between members . . . or others" was not intended to include associated persons.
F.N. Wolf Co. v. Egan, N.Y.L.J., Nov. 21, 1994, at 25. In this manner, the court was able to find in favor of arbitration. See also, Kidd, supra, 32 F.3d 519.
At least one court has adhered to the tenet that deference should be given to an agency's interpretations of its own rules, choosing to accept the NASD's own interpretation of the 1992 Code, something the Farrand court refused to consider. The New York Supreme Court in F.N. Wolf Co. v. Bowles, 160 Misc.2d 752, 610 N.Y.S.2d 757 (Sup.Ct. 1994), accepted the NASD's assertions that proposed Code amendments were a direct response to Higgins v. Superior Courtof Los Angeles County, 1 Cal.Rptr.2d 57, 234 Cal.App.3d 1464
(1991), a California decision which held against the arbitrability of employment disputes under the Code. 160 Misc. 2
d, 756, citing 58 Fed. Reg. 39070, 39071 (1993). It also emphasized that the changes were proposed "in order to clear up any ambiguity," as well as to bring the NASD in line with the NYSE. Id. (see infra, note 1). In addition, the court considered NASD literature and other communications which expressed, as early as 1987, that employment disputes were covered by the 1992 Code. Id., citing 52 Fed. Reg. 9232 (1987). See also, Kidd, supra, 32 F.3d 520.
Other courts, however, have simply failed to perceive ambiguity in the Code, finding instead that its terms are clear and have always permitted arbitration of employment disputes. In Association of Investment Brokers v. SEC,676 F.2d 857, 861 (D.C. Cir. 1982), for example, Judge — now Justice — Ruth Bader Ginsburg stated plainly: "NASD rules mandate arbitration of employer-employee disputes, and did so, to the same extent as they do now, before [the introduction of the U-4 Form in 1975]." CT Page 2001
 III.
The issuance of a permanent injunction is to be decided upon the facts proven at trial. H.O. Canfield Co. v. UnitedConstruction Workers, 134 Conn. 623, 626, 60 A.2d 176 (1948). The granting of an injunction rests within the sound discretion of the court. The relief granted must be compatible with the equities of the case. The issue of whether the relief demanded is appropriate to the circumstances is a question that must be considered and weighed upon trial. Dupuis v. Submarine Base Credit Union,170 Conn. 344, 356, 365 A.2d 1093 (1976). Injunctive relief properly lies against threatened legal action when the rights of a party are clear and full legal relief is not available to him. City of Waterbury v. Commission on Human Rights andOpportunities, 160 Conn. 226, 231, 278 A.2d 771 (1971). The proper burden of proof for injunctive relief is by preponderance of the evidence. Town of Beacon Falls v.Posick, 17 Conn. App. 17, 24 n. 5, 549 A.2d 656 (1988), rev'd on other grounds, 212 Conn. 570, 563 A.2d 285 (1989).
The granting of injunctive relief will turn upon whether the 1992 Code — the version of the Code in effect at the time of Christiani's termination — encompasses employment disputes. Several established principles of Connecticut law guide the court's decision.
First, as a threshold matter, this court may not adjudicate the "arbitrability" issue if the terms of the U-4 agreement executed by the parties specifically assign this responsibility to the arbitrator itself. Normally, the decision as to whether or not a particular dispute is arbitrable falls on the court. E.g., Wynn v. MetropolitanProperty Casualty Insurance Co., 30 Conn. App. 803, 806,623 A.2d 66 (1993), aff'd, 228 Conn. 436, 635 A.2d 814 (1994). If the parties to a contract expressly agree to refer questions of arbitrability to the arbitrators, then the Court must enforce their agreement by refusing to answer the question itself. If, however, their contract does not so provide, then the Court must decide such questions, for "[a] party cannot be forced to arbitrate the arbitrability issue." Litton FinancialPrinting Division v. NLRB, 501 U.S. 190, 208, 111 S.Ct. 2215,115 L.Ed.2d 177 (1991). CT Page 2002
"The intention to have arbitrability determined by an arbitrator can be manifested by an express provision or through the use of broad terms to describe the scope of arbitration, such as `all questions in dispute and all claims arising out of' the contract or `any dispute that cannot be adjudicated.'" White v. Kampner, 229 Conn. 465, 472,641 A.2d 1381 (1994), citing Welch Group v. Creative Drywall, Inc.,215 Conn. 464, 467, 576 A.2d 153 (1990). In Turner ConstructionCo. v. Eppoliti, Inc., 28 Conn. App. 139, 144, 609 A.2d 1064
(1992), the court described the terms of a contract thus: "The clause provides . . . for arbitration of `[a]ny dispute arising at any time out [the] [contract]. . . .' The [contract] contains no exclusionary language removing the question of arbitrability from the arbitrator's domain." See also White, supra, 229 Conn. 473-75.
In the instant case, page 4, paragraph 5 of the U-4 form signed by Christiani provides as follows:
 I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in item 10 as may be amended from time to time.
The broad nature of this statement, and lack of any qualifying or exclusionary language imposing conditions precedent, leads to the conclusion that the very issue of arbitrability in this case is reserved for the arbitrator, not the court.
Even if the court was charged with determining arbitrability, however, the laws of Connecticut favor and encourage arbitration. Garrity v. McCaskey, 223 Conn. 1, 4-5,612 A.2d 742 (1992); City of Bridgeport v. Connecticut PoliceDepartment Employees Local 1159, 32 Conn. App. 289,628 A.2d 1336 (1993). Consensual arbitration, as an alternative means of settling disputes and avoiding the formalities, delay, expense and vexation of ordinary litigation has frequently been endorsed as a favored means of settling differences. Cityof Hartford v. IAFF, Local 760, 24 Conn. App. 254, 256,587 A.2d 435 (1991).
Though policy favors arbitration, the terms of the CT Page 2003 contract itself must support, to some appreciable degree, an agreement between the parties to arbitrate the dispute in question. Indeed, the doctrine of Volt Information Sciences,Inc. v. Leland Stanford Junior University, 489 U.S. 468, 478,109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) compels arbitration only where the parties have agreed to so engage. The contract for arbitration must be examined using ordinary principles of contract interpretation but with an important proviso based on the policy favoring arbitration. The so-called "positive assurance" test mandates that doubts in the interpretation of contractual language should be resolved in favor of "coverage," that is, arbitration. United Steel Workers ofAmerica v. Warrior Gulf Navigation Co., 363 U.S. 574, 582,80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); see also, e.g., MosesCone Hospital v. Mercury Construction Corp., 460 U.S. 1, 24,103 S.Ct. 927, 74 L.Ed.2d 765 (1982); White v. Kampner,
supra, 229 Conn. 471.
Though Sections 1 and 8 of the 1992 Code may not explicitly delineate employment disputes as arbitrable, reasonable interpretations may be discerned which support Christiani's claim. As stated by the New York Supreme Court in F.N. Wolf Co. v. Bowles, supra:
 "[A] distinction must be drawn between a dispute eligible for arbitration under the section and the parties bound to arbitrate the dispute. In other words, section 1 of part I contains two components. First, it defines the substantive type of controversy which is within the scope of arbitration. Second, it defines the class of persons who may seek or be required to arbitrate such a controversy. Section 8 extends this class to include persons associated with a member who have an eligible dispute with other associates. Plaintiff's suit . . . is subject to arbitration under this latter section. Although neither of these parties is a member of the NASD, each is a person associated with a member . . . and the substantive dispute is the type arbitrable under part I since it arises out of or in connection with the business of the employer. CT Page 2004
Id., 757-58 citing Singer v. Jeffries Co., 78 N.Y.S.2d 76,86 (1991). This analysis is not only reasonable, but persuasive, as well. Even absent interpretations proffered by the NASD, the 1992 Code, standing by itself, is capable of several readings which authorize the arbitrability of employment disputes. Given the prevailing presumption in Connecticut in favor of arbitrability, Farrand's refusal to accept an interpretation of Sections 1 and 8 which it acknowledged "would not exceed the bounds of reason" must be rejected.
Further, with regard to the interpretation of statutes, including codes of arbitration, general principles of administrative law favor deference to agency conclusions.Bennett v. Administrator, Unemployment Compensation Act,34 Conn. App. 620, 626, 642 A.2d 743 (1994). "Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of [the] court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." Starr v. Commissioner of EnvironmentalProtection, 226 Conn. 358, 372, 627 A.2d 1296 (1993). To date, numerous NASD statements concerning the scope of the 1992 Code exist, among them: an affidavit by an NASD vice-president; documents submitted to the Securities and Exchange Commission explaining the 1993 amendments; pronouncements in the Federal Register expressing a desire to "clear up any ambiguity" and "parallel the NYSE . . . ." Perhaps the clearest manifestation of NASD intent, however, is seen in the preamble to the revised 1993 Code: "On October 1, 1993, Sections 1 and 8 were amended to clarify that employment-related disputes are arbitrable under the Code." The word "clarify" has been defined as follows: "to free from darkness," The Oxford English Dictionary 462 (1933); in other words, to reveal that which is already present, only hidden. By introducing the 1993 amendments to the Code in this manner, the NASD has expressed its own legislative intent regarding Sections 1 and 8, revealing the long-standing and continuing inclusion of employment disputes among matters arbitrable
 IV.
Under the broad terms of the U-4 document entered into by the parties, decisions as to the arbitrability of employment disputes under the NASD Code are solely the CT Page 2005 responsibility of the arbitrator. Accordingly, plaintiff's motion for a permanent injunction is denied.
Berger, Judge