32 F.3d 516
 65 Fair Empl.Prac.Cas. (BNA) 1345
 Ronald KIDD; Thomas Hampton, on behalf of others similarly
situated, Plaintiffs-Appellees,
v.
EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES of
America, a corporation, Defendant-Appellant,
James W. Brown, Defendant.
 No. 93-6571.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 16, 1994.
 
 James C. Huckaby, Jr., Haskell, Slaughter, Young & Johnston, Birmingham, AL, for appellant.
 Beverly P. Baker, C. Geoffrey Weirich, R. Lawrence Ashe, Jr., Jocelyn J. Hunter, Paul Hastings, Janofsky & Walker, Atlanta, GA, for Equitable Life.
 Robert L. Wiggins, Jr., Byron R. Perkins, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for Ronald Kidd.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before EDMONDSON, Circuit Judge, JOHNSON, Senior Circuit Judge, and PITTMAN*, Senior District Judge.
 JOHNSON, Senior Circuit Judge:
 
 
 1
 The Equitable Life Assurance Company ("Equitable") appeals from the district court's order denying Equitable's motion to compel arbitration of employment discrimination claims asserted by two of its securities sales representatives. On appeal, Equitable contends that certain applications the two representatives signed with the National Association of Securities Dealers ("NASD") mandate arbitration. For the reasons that follow, we reverse the district court.
 
 I. STATEMENT OF THE CASE
 
 2
 Ronald Kidd and Thomas Hampton ("Appellees") are, respectively, present and former securities sales agents with Equitable and its wholly owned subsidiary, Equico Securities ("Equico"). Kidd joined Equitable in 1978, Hampton in 1987. In connection with their securities sales for Equitable, each completed an application, known as a "U-4" application, with the NASD.[1]
 
 
 3
 Kidd signed his first U-4 for Equitable in November 1978. This agreement contained no compulsory arbitration provision, but Kidd's signature bound him to "abide by the Statute(s), Constitution(s), Rules, and By-laws, as ... amended from time to time of the [NASD]."
 
 
 4
 Later, U-4 forms were amended. The NASD added a provision requiring the applicant to submit to arbitration "any dispute, claim or controversy between me and my firm ... that is required to be arbitrated under the rules, constitutions or bylaws of the [NASD]." This clause appears in a January 1983 application Kidd executed for Equico. Hampton's U-4, completed in 1987 for both Equitable and Equico, also contained the compulsory arbitration provision. At the time Appellees signed these U-4s, Sec. 8 of the NASD Arbitration Code read, in relevant part:
 
 
 5
 Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:
 
 
 6
 (1) a member against another member;
 
 
 7
 (2) a member against a person associated with a member or a person associated with a member against a member; and....
 
 
 8
 Code of Arbitration Procedure, NASD Manual (CCH) p 3708 (hereinafter "pre-amendment Code"). Pursuant to Sec. 1 of the preamendment Code, arbitration was required for
 
 
 9
 any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company:
 
 
 10
 (1) between or among members;
 
 
 11
 (2) between or among members and public customers, or others....
 
 
 12
 NASD Manual (CCH) p 3701.
 
 
 13
 In January 1993, Appellees brought suit against Equitable alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. Secs. 2000e--2000e-17 (West 1993), as amended, and section 1981 of the Civil Rights Act of 1866, 42 U.S.C.A. Sec. 1981 (West 1993), as amended.[2] Equitable immediately moved the court to compel arbitration of Appellees' individual claims and to stay federal court proceedings. It argued that the NASD rules expressly require plaintiffs to arbitrate their claims.
 
 
 14
 After hearing oral argument, the district court--without an opinion--denied the motion. In October 1993, while this appeal was pending, the NASD amended its rules to expressly provide for compulsory arbitration of employment-related disputes. See NASD Manual (CCH) p 3701 (1993). Equitable says Appellees are bound by this amendment because (1) they agreed to abide by all amendments and changes to the NASD rules and (2) the amendment simply "clarified" the NASD's intention that such claims be arbitrated under the pre-amendment NASD Code. Alternatively, if Appellees are not bound by this latest amendment, Equitable asserts that the pre-amendment Code mandates arbitration of the race discrimination claims.[3]
 
 II. ANALYSIS
 
 15
 We review de novo the district court's denial of Equitable's motion to compel arbitration. See Luckie v. Smith Barney, Harris Upham & Co., 999 F.2d 509, 512 (11th Cir.1993).
 
 
 16
 Effective October 1, 1993, Secs. 1 and 8 of the NASD Code of Arbitration were officially amended with the Securities and Exchange Commission's approval. Section 1 of the Code now provides "for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member." NASD Manual (CCH) p 3701 (emphasis added). Similarly, Sec. 8(a) now states that "[a]ny dispute ... eligible for submission under Part I of this Code between or among members and/or associated persons ... arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code." Id. at p 3708 (emphasis added). Obviously, if the amended NASD Code applies to Appellees, their claims must be submitted to arbitration.
 
 
 17
 Appellees claim they are not subject to the amended Code. According to them, the pre-amendment Code did not require arbitration of employment-related disputes. Thus, they view the amendment as a substantive change that should not be given retroactive application. We disagree.[4]
 
 
 18
 As noted, Sec. 1 of the pre-amendment Code reads:
 
 
 19
 This Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company:
 
 
 20
 (1) between or among members;
 
 
 21
 (2) between or among members and public customers, or others ...
 
 
 22
 NASD Manual (CCH) p 3701.
 
 
 23
 Appellees urge this Court to adopt the Seventh Circuit's holding in Farrand v. Lutheran Bhd., 993 F.2d 1253 (7th Cir.1993) that the pre-amendment NASD Code did not mandate arbitration of employment-related disputes. In Farrand, the court held that the placement of the colon in Sec. 1 limited the type of disputes required to be arbitrated to disputes "between or among members [or] between or among members and public customer, or others." 993 F.2d at 1254-55. According to the court, the employee-stockbroker was not an "other" because including employees within the definition of "others" would render superfluous Sec. 1's limitations on the persons subject to compulsory arbitration. Id.
 
 
 24
 We decline to adopt the Farrand decision. In our view, the colon modifies the clause immediately preceding it. See, e.g. William Strunk, Jr. & E.B. White, The Elements of Style 7-8 (3d ed. 1979) ("A colon tells the reader that what follows is closely related to the preceding clause."); Texas Law Review, Manual on Style 36 (4th ed. 1979) ("A colon functions primarily to introduce material promised or suggested in the clause preceding the colon."). Thus, the colon relates to the insurance clause as it immediately precedes the colon. Accordingly, Sec. 1 requires arbitration for any dispute connected to an NASD member's business, except for disputes involving the insurance business of an NASD member that are (1) between NASD members or (2) between NASD members and public customers or others.[5]
 
 
 25
 Moreover, we believe this reading accords with the Supreme Court's statement that:
 
 
 26
 [Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of a contract [or some other question].
 
 
 27
 Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The former Fifth Circuit expressed a similar sentiment. See Wick v. Atlantic Marine, Inc., 605 F.2d 166, 168 (5th Cir.1979) ("[U]nless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted.").[6]
 
 
 28
 Furthermore, this reading of Sec. 1 eliminates tensions in the NASD Code that occur under Farrand. Section 8 of the pre-amendment NASD Code requires an employee as a "person associated with a member" to arbitrate disputes or claims against his employer, the NASD member. By holding that an employee is not an "other" within the scope of Sec. 1, Farrand eliminates Sec. 8's requirement that employees arbitrate disputes with their employers. In contrast, because we find that "others" applies only to the insurance exception, Sec. 8 retains full effect. Moreover, our reading also gives full effect to the language of the U-4 forms obligating Appellees to arbitrate "any dispute, claim, or controversy between me and my firm ... that is required to be arbitrated under the rules, constitutions, or other bylaws of the [NASD]." To hold otherwise would result in the strange situation wherein Appellees signed U-4 forms promising to arbitrate any disputes with their employer required to be arbitrated by the NASD at a time when the NASD rules did not require employees to arbitrate disputes with their employer. If the NASD did not mandate arbitration of employer-employee disputes, there would be no reason to require Appellees to sign U-4 forms promising to arbitrate such disputes.
 
 
 29
 Finally, ample evidence exists showing that the pre-amendment NASD Code required arbitration of employment disputes. In dismissing a 1982 challenge to the inclusion of mandatory arbitration provisions in U-4 forms, Judge, now Justice, Ruth Bader Ginsburg, noted that "compulsory arbitration became a feature of the Code of the NASD ... before ... 1975." Association of Inv. Brokers v. Securities, Etc., 676 F.2d 857, 860 (D.C.Cir.1982). Judge Ginsburg further stated that "NASD rules mandate arbitration of employer-employee disputes, and did so, to the same extent, as they do now, before the development of [U-4 forms]." Id. at 861 (emphasis added). Moreover, in 1987, the NASD expressly stated that employment disputes between NASD members and their "registered representatives," such as Appellees, were subject to mandatory arbitration. See 52 Fed.Reg. 9232 (1987). See also 58 Fed.Reg. 45,932 (1993) (stating that NASD was amending language to clarify that employment disputes are, and have been, arbitrable).
 
 III. CONCLUSION
 
 30
 We REVERSE the district court's order denying Equitable's motion to compel arbitration, and REMAND the case for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, Sitting by Designation
 
 
 [1]
 The U-4 application is used to register securities dealers with different exchanges and associations
 
 
 [2]
 Kidd's complaint alleged Equitable discriminated against him in several aspects of his employment because he was black; Hampton claimed he suffered the same forms of discrimination, and that he was discharged because he is black. Both Kidd and Hampton filed complaints with the EEOC as early as 1989, alleging individual and class-wide racial discrimination. After four years of unsuccessful attempts at reconciliation, Kidd took his grievance to court where Hampton joined him in a class action
 
 
 [3]
 Since the 1993 amendment was passed while this case was pending on appeal, Equitable's argument on the application of the amendment was not raised below. Because the argument involves a question of law, we consider it anyway. See McGinnis v. Ingram Equipment, 918 F.2d 1491, 1495 (11th Cir.1990)
 
 
 [4]
 Similarly, we reject Appellees' claims that arbitration should not be required because (1) the U-4 form is adhesive as it forces them to adhere to changes in the Code, (2) Sec. 12(d) of the amended Code precludes arbitration of their disputes, (3) Equitable has waived the right to arbitrate by choosing to proceed at the EEOC, and (4) the NASD's arbitration procedures are inadequate
 
 
 [5]
 Equitable's personnel practices do not constitute a dispute over its "insurance business."
 
 
 [6]
 The Farrand court acknowledged that it was not unreasonable to interpret the pre-amendment Code to require arbitration of employment disputes. By disregarding such a construction, Farrand conflicts with Cone and Wick