72 F.3d 793
 69 Fair Empl.Prac.Cas. (BNA) 1544,
67 Empl. Prac. Dec. P 43,870
Jake ARMIJO, Plaintiff-Appellant,
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA, Tom Brokaw, Miles
Melton, Defendants-Appellees.
Erlinda HOURIGAN, Plaintiff-Appellant,
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA, Tom Brokaw, Judith
Crane, Laura Stubblefield, Defendants-Appellees.
Pete FUENTES, Plaintiff-Appellee,
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA, Tom Brokaw,
Defendants-Appellants.
 Nos. 94-2131, 94-2132, 94-2257.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 15, 1995.
 
 Kenwood C. Youmans, of Seyfarth, Shaw, Fairweather & Geraldson, Los Angeles, California (Lorraine H. O'Hara, of Seyfarth, Shaw, Fairweather & Geraldson, Los Angeles, California, with him on the reply brief; and Duane C. Gilkey, Barbara G. Stephenson, Charles W. Weese, of Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, New Mexico, on the opening briefs) for defendants.
 Narciso Garcia, Jr., Albuquerque, New Mexico, for all plaintiffs.
 Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge and JENKINS,* District Judge.
 EBEL, Circuit Judge.
 
 
 1
 These three cases each involve federal and state discrimination claims by former sales agents, Jake Armijo ("Armijo"), Linda Hourigan ("Hourigan") and Pete Fuentes ("Fuentes"), who were terminated by Prudential Insurance Co. of America ("Prudential"). Prudential moved to compel arbitration and to dismiss Plaintiffs' claims based on a signed agreement to arbitrate under the National Association of Securities Dealers ("NASD") Code of Arbitration Procedure ("Code"). In the actions brought by Armijo and Hourigan, the district court ruled for Prudential, compelling arbitration and dismissing Plaintiffs' claims, and Plaintiffs appealed. In Fuentes's action, a different judge of the same district ruled that Plaintiff was not compelled to arbitrate his claim, and Prudential appealed.[1]
 
 I. BACKGROUND
 
 2
 Plaintiffs Fuentes, Hourigan, and Armijo were all employees who worked as sales agents for Prudential in Albuquerque. Plaintiffs--who are Hispanic--primarily sold insurance policies, but also sold mutual funds through Pruco Securities Corporation ("Pruco"). Because they were authorized to sell mutual funds, each of the Plaintiffs was required to sign a Uniform Application for Securities Industry Registration or Transfer ("Form U-4").
 
 The Forms U-4 committed the plaintiffs to
 
 3
 . . . . .
 
 
 4
 arbitrate any dispute, claim or controversy that may arise between me and my firm [The Prudential] ... that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in Item 10 as may be amended from time to time.[2]
 
 
 5
 Each of the Plaintiffs' Form U-4 listed the NASD as an organization with which he or she was to register. Thus, each Plaintiff agreed to arbitrate disputes covered by the NASD Code. It is the interpretation then of the NASD arbitration provisions that forms the crux of this appeal.
 
 
 6
 Two provisions of the NASD Code are relevant: Section 1 and Section 8. Section 1 defines generally the matters eligible for arbitration, and it provides for
 
 
 7
 arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company:
 
 
 8
 (1) between or among members;
 
 
 9
 (2) between or among members and public customers, or others; and
 
 
 10
 (3) between or among members, registered clearing agencies with which the Association has entered into an agreement to utilize the Association's arbitration facilities and procedures, and participants, pledges, or other persons using the facilities of a registered clearing agency, as these terms are defined under the rules of such a registered clearing agency.
 
 
 11
 Section 8 of the NASD Code addresses which disputes are required to be arbitrated--a subset of the disputes eligible for arbitration under Section 1--and provides that:
 
 
 12
 [a]ny dispute, claim, or controversy eligible for submission under Part I of this Code [Section 1, quoted above, is in Part I] between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:
 
 
 13
 (1) a member against another member;
 
 
 14
 (2) a member against a person associated with a member or a person associated with a member against a member; and,
 
 
 15
 (3) a person associated with a member against a person associated with a member.
 
 
 16
 The version of the Code in effect during the alleged acts of discrimination was the February 1992 version of the Code. On October 1, 1993, the NASD amended the Code. Each of the Plaintiffs was terminated and filed discrimination claims with the EEOC prior to October 1, 1993, claiming that they were terminated because of their race, sex, or national origin. However, each of the Plaintiffs' complaints were not filed in federal court until after October 1, 1993. On November 24, 1993, Prudential filed motions to compel arbitration and to dismiss Plaintiffs' complaints in each of these actions.[3] Initially, the district courts denied all three motions. However, upon a motion for rehearing and submission to the court of the October 1, 1993 Code amendments, the district court granted Prudential's motion in Hourigan and Armijo. In Fuentes, the district court denied Prudential's motion for rehearing based on the amended Code. Each of the losing parties appealed.
 
 II. DISCUSSION
 Standard of Review
 
 17
 We review a district court's grant or denial of a motion to compel arbitration de novo, applying the same legal standard employed by the district court. MidAmerica Federal Sav. and Loan Ass'n v. Shearson/American Express, Inc., 886 F.2d 1249, 1259 (10th Cir.1989); Kidd v. Equitable Life Assurance, 32 F.3d 516, 518 (11th Cir.1994); Sunkist Soft Drinks, Inc. v. Sunkist Growers, 10 F.3d 753, 756 (11th Cir.1993), cert. denied, --- U.S. ----, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); Trap Rock Industries, Inc. v. Local 825, Int'l Union of Operating Engineers, 982 F.2d 884, 887 (3d Cir.1992).
 
 
 18
 A. Jurisdiction Over Armijo and Hourigan Appeals of District Court Decisions to Compel Arbitration
 
 
 19
 As a preliminary issue, with respect only to Armijo and Hourigan,[4] Prudential argues that we do not have jurisdiction over Plaintiffs' appeals from the district court decisions to compel arbitration. See 9 U.S.C. Sec. 16(b)(2). In Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953 (10th Cir.1994), we held that interlocutory appellate review of a district court's grant of a motion to compel arbitration was inappropriate when the district court also should have granted the motion to stay proceedings pending arbitration. Id. at 955. Had the motion to stay been properly granted, the order granting arbitration would then not have been a final order. Id. Hence, we declined to consider the arbitrability issue on its merits. Id. Prudential argues that our holding in Adair precludes our exercise of jurisdiction in this case. However, the difference is that Adair ultimately dealt with a non-final order compelling arbitration whereas here we have a final order compelling arbitration. 9 U.S.C. Sec. 16(a)(3) expressly provides for the appealability of a final order with respect to arbitration.
 
 
 20
 In Adair, the plaintiff brought a breach of contract claim, along with a claim for declaratory judgment that an arbitration clause in the parties' agreement did not compel arbitration of the particular contract dispute at issue. 25 F.3d at 954. Defendant argued that the agreement provided for mandatory arbitration and moved for a stay pending arbitration. Id. The district court found that the contract dispute was within the scope of the arbitration agreement and ordered the parties to proceed to arbitration. Id. However, instead of granting the motion for a stay pending arbitration, the district court dismissed the complaint, and plaintiff appealed. Id. at 955.
 
 
 21
 The Federal Arbitration Act provides that the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. Sec. 3 (emphasis added). Because the defendant in Adair had requested a stay, it was error for the district court not to have stayed the action pending arbitration. 25 F.3d at 955. We, therefore, vacated the district court's order of dismissal. Id. When we vacated the district court's dismissal and remanded the case to the district court to enter a stay, the district court's disposition was no longer final, and thus we declined to consider the arbitrability of the claim. See 9 U.S.C. Sec. 16(b)(1) and (2).
 
 
 22
 However, in the case before us, we are not faced with a district court's erroneous failure to enter a requested stay. Prudential moved the district court to compel arbitration, but, instead of requesting a stay pending such arbitration, Prudential requested only that the district court dismiss Plaintiffs' complaints with prejudice. Hourigan App. at 15; Armijo App. at 8. We find no evidence in the record of any request for a stay. We therefore cannot find error here in failing to grant a stay. Thus, in this case, the district court's order granting Prudential's motion to compel arbitration and to dismiss Plaintiffs' claims was clearly a final order, permitting us to exercise jurisdiction over this case pursuant to 28 U.S.C. Sec. 1291. See Farrand v. Lutheran Brotherhood, 993 F.2d 1253, 1254 (7th Cir.1993) (in a similar action, holding that 9 U.S.C. Sec. 16(b) does not preclude plaintiffs' appeal of an order compelling arbitration and dismissing plaintiffs' claims because such an order conclusively disposes of all issues in the case).
 
 
 23
 B. Whether the Parties Agreed to Arbitrate These Claims
 
 
 24
 The Supreme Court has held that an employee can be required to arbitrate federal claims for employment discrimination if he or she has contracted to do so. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (holding that plaintiff's ADEA claim was subject to arbitration). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). This presumption in favor of arbitrability also applies "where a party bound by an arbitration agreement raises claims founded on statutory rights." Id.; see also Metz v. Merrill Lynch, Pierce, Fenner & Smith, 39 F.3d 1482, 1487-88 (10th Cir.1994) (evaluating arbitrability of Title VII claims). Although the parties' intent controls regarding whether they agreed to arbitrate a particular dispute, determining their intent is a question of law for the court to decide. See Mitsubishi Motors, 473 U.S. at 626, 105 S.Ct. at 3353-54. Here, we decide that Plaintiffs have failed to rebut the presumption of arbitrability.
 
 
 25
 1. Arbitration of Employment Disputes Under the February 1992 Version of the NASD Code
 
 
 26
 As of October 1, 1993, NASD amended its Code to make it clear that its arbitration provisions covered at least certain employment disputes.[5] Unfortunately, the February 1992 Code is less than clear regarding its applicability to employment disputes.
 
 
 27
 Notwithstanding the ambiguity of the February 1992 version of the Code (or perhaps more correctly, because of such ambiguity), we conclude that the most appropriate construction of the February 1992 Code is to apply its arbitration provisions to employment disputes involving these Plaintiffs.
 
 
 28
 First, we must interpret arbitration clauses liberally, and all doubts must be resolved in favor of arbitration. As discussed supra, "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Here, considerable doubt exists regarding the meaning of the arbitration clauses in question. Other courts that have sought to interpret these provisions have recognized the ambiguity and unclarity presented although they have resolved the ambiguities in different ways. Compare Kidd v. Equitable Life Assurance Society of the United States, 32 F.3d 516 (11th Cir.1994) (Code applies to employment disputes) with Farrand v. Lutheran Brotherhood, 993 F.2d 1253 (7th Cir.1993) (Code does not apply to employment disputes). However, to acknowledge the ambiguity is to resolve the issue, because all ambiguities must be resolved in favor of arbitrability.
 
 
 29
 Second, the only way that Section 8 of the Code can be reconciled with Section 1 is to interpret Section 1 to include the arbitration of employment disputes. Section 1 defines the general universe of issues that may be arbitrated, and Section 8 describes a subset of that universe of disputes that must be arbitrated under the Code. Among the issues which Section 8 requires to be arbitrated are the following:
 
 
 30
 Any dispute ... eligible for submission under Part I of this Code [including Section 1] between or among members and/or associated persons ... arising in connection with ... the activities of such associated person(s) shall be arbitrated under this Code.
 
 
 31
 NASD Code Sec. 8 (emphasis added).
 
 
 32
 The mandate of Section 8(a) that disputes between associated persons and member companies must be arbitrated requires us to construe the phrase "others" in Section 1(2) to include "associated persons."[6] It appears that Plaintiffs are associated persons because that term is defined to include "any natural person engaged in the ... securities business who is directly or indirectly ... controlled by [a] member." NASD By-Laws, Art. I, p 1101[m]. It appears that each Plaintiff did engage in the securities business under the control of Prudential.[7] Because we are required to give significance to all provisions in a contract, whenever possible, and to interpret one provision so as to avoid negating another, we must give Section 1 an interpretation at least as broad as that clearly called for in Section 8. See Mastrobuono v. Shearson, Lehman Hutton, Inc., --- U.S. ----, ----, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995).
 
 
 33
 Third, we note that most of the other courts that have addressed the arbitrability of employment disputes under the November 1992 NASD Code have concluded that such disputes are arbitrable. Although we do not always agree with the reasoning advanced in each of those cases, they reflect a faithfulness to the same general mandate that is driving our decision in this case--the requirement to construe arbitration clauses broadly where possible. See Kidd, 32 F.3d 516; Johnson v. Piper Jaffray, Inc., 530 N.W.2d 790, 796-97 (Minn.1995); Foley v. Presbyterian Ministers' Fund, No. 90-1053, 1992 WL 63269 (E.D.Pa. March 19, 1992); Gardner v. Benefits Communications Corp., No. 91-0536 JGP, 1991 WL 294564 (D.D.C. Dec. 31, 1991); Trumbetta v. Metropolitan Life Ins. Co., No. 94-3275, 1994 WL 481152 (E.D.Pa. Sept. 1, 1994); Prudential Ins. Co. v. Shammas, 865 F.Supp. 429, 432 (W.D.Mich.1993). See also Assoc. of Investment Brokers v. Securities and Exchange Comm'n, 676 F.2d 857, 861 (D.C.Cir.1982) (dicta by Judge Ginsburg that "NASD rules mandate arbitration of employer-employee disputes"). But see Farrand, 993 F.2d at 1254-55 (7th Cir.1993) (declining to require arbitration of employment dispute between a member of NASD and one of its registered representatives).
 
 
 34
 Fourth, each of the parties signed a Form U-4 which provides:
 
 
 35
 I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules, constitutions, or by-laws of [NASD].
 
 
 36
 That language clearly indicates that the parties believed, and intended, that at least certain disputes between Prudential and these Plaintiffs would be arbitrated. Unless the word "others" in Section 1(2) of the NASD Code is broadly interpreted to include these Plaintiffs, their explicit agreements in Form U-4 would be a nullity. Furthermore, the language in the parties' Form U-4 agrees that they will submit to arbitration any disputes "required" to be arbitrated under the NASD Code, and the disputes "required" to be arbitrated in Section 8(a) include disputes between a member firm, like Prudential, and associated persons, like Plaintiffs.[8] Section 8(a) broadly calls for arbitration of disputes "in connection with activities of such associated person(s)."
 
 
 37
 Finally, the NASD has indicated as early as 1987 that the Code applies to disputes between employers and sales representatives. 52 Fed.Reg. 9232 (1987). The association stated that the purpose of the 1993 amendment was simply to "clear up any ambiguity" and "to assure" that employment disputes are arbitrable under Section 8. 58 Fed.Reg. at 39071; see also 58 Fed.Reg. 45932 (1993).
 
 
 38
 2. The Insurance Business Exception.
 
 
 39
 We similarly reject Plaintiffs' claim that these controversies are excluded from the matters eligible for submission in Section 1 of the NASD Code because they are "disputes involving the insurance business of any member which is also an insurance company."[9]
 
 
 40
 Although Prudential is an insurance company, there is nothing unique about these discrimination claims by Plaintiffs that involve the "insurance business" of Prudential. Plaintiffs are simply alleging that they were wrongfully discriminated against as employees in violation of Title VII of the Civil Rights Act of 1964 (and in some instances claims are also made pursuant to 42 U.S.C. Sec. 1981 and pendant state claims). Illegal employment discrimination, if it exists, involves an employer's statutory obligations as an employer rather than as an insurer. Admittedly, Prudential's explanation for its actions against these Plaintiffs is that, in part, they replaced one Prudential policy with another or knowingly sold a policy based on a false application form. However, the dispute as framed by the Plaintiffs is predicated on the civil rights laws, not the insurance laws, and they are predicated on Prudential's role as an employer rather than as an insurer.
 
 
 41
 If Section 1 of the NASD Code were construed to exclude from arbitration any employment dispute that arises within the context of insurance employment, it would render the arbitration language in these Plaintiffs' Forms U-4 illusory. Once again, our obligation is to reconcile and to give meaning to all provisions of the parties' contracts. Our obligation to construe arbitration clauses broadly compels us to construe this exception to the arbitration clause narrowly. Thus, we conclude that the insurance exception to arbitrability does not include an exception for ordinary employment disputes merely because the defendant employer is an insurance company.
 
 
 42
 Our narrow construction of the insurance exception to arbitrability under Section 1 of the NASD Code is consistent with the other cases that have considered this issue. In Trumbetta v. Metropolitan Life Ins. Co., No. 94-3275, 1994 WL 481152 (E.D.Pa. Sept. 1, 1994), the district court held that the dispute did not fall under the insurance business exception because, "[a]lthough the plaintiff [a former insurance sales agent] [had] made some general allegations concerning the defendants' business practices, I find that the actual basis for each of his claims is the conduct of his supervisors that led to his constructive discharge." Similarly, in Prudential Ins. Co. v. Shammas, 865 F.Supp. 429, 432 (W.D.Mich.1993), the district court found that a former insurance sales agent's employment discrimination claims did not fall under the insurance business exception because the suit concerned the conduct of other employees toward the plaintiff--and "had nothing specifically to do with the insurance aspect of Prudential's business." See also Foley v. Presbyterian Ministers' Fund, No. 90-1053, 1992 WL 63269 (E.D.Pa. March 19, 1992) (holding that the language of the insurance business exception was not broad enough to cover personnel practices of insurance companies); Wojcik v. Aetna Life Ins. and Annuity Co., 901 F.Supp. 1282, 1286-87 (N.D.Ill.1995) (requiring that the plaintiff allege unlawful insurance practices, not merely wrongful employment conduct directed at plaintiff, to invoke exception).
 
 CONCLUSION
 
 43
 For the reasons stated above, we REVERSE the district court's decision to deny arbitration in Fuentes and we REMAND for further proceedings consistent with this opinion. We AFFIRM the district court's decision to compel arbitration in Hourigan and Armijo.
 
 
 44
 JENKINS, Senior District Judge, concurring in the judgment.
 
 
 45
 I concur in the judgment. I write separately because I believe the case law interpreting the federal Arbitration Act, title 9 of the U.S.Code, has gotten far afield from Congress's original intent in enacting the statute.
 
 
 46
 The Arbitration Act was enacted "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991). The "presumption of arbitrability" the court applies elevates arbitration agreements to a preferred position over other contracts.
 
 
 47
 The issue in this case, as in any case of contract interpretation, is the parties' intent. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (with agreements to arbitrate, "as with any other contract, the parties' intentions control"). Ordinarily, the court determines that issue as a matter of law, from the terms of the contract itself. See, e.g., Florom v. Elliott Mfg., 867 F.2d 570, 575 (10th Cir.1989). But where the terms of the contract are ambiguous (and I agree that the contracts at issue here are hopelessly ambiguous), the issue then becomes a factual question, to be decided from external evidence of the parties' intent, unless only one conclusion can be drawn from the undisputed evidence. See, e.g., Amoco Rocmount Co. v. Anschutz Corp., 7 F.3d 909, 917 (10th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1057, 127 L.Ed.2d 377 (1994); Lumpkin v. Envirodyne Indus., Inc., 933 F.2d 449, 456 (7th Cir.), cert. denied, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991); LaSalle Nat'l Bank v. General Mills Restaurant Group, 854 F.2d 1050, 1052 (7th Cir.1988); Teton Exploration Drilling, Inc. v. Bokum Resources Corp., 818 F.2d 1521, 1526 (10th Cir.1987); Southern Natural Gas Co. v. Pursue Energy, 781 F.2d 1079, 1081 (5th Cir.1986); Gardner-Zemke Co. v. State, 109 N.M. 729, 790 P.2d 1010, 1014 (1990); Shaeffer v. Kelton, 95 N.M. 182, 619 P.2d 1226, 1229-30 (1980).
 
 
 48
 It seems to me that the rule that doubts about the scope of arbitrable issues should be resolved in favor of arbitration, like other rules of construction, should be applied only as a last resort, after the court or trier of fact has considered extrinsic evidence of the parties' intent and found it inconclusive. Cf. Gardner-Zemke, 790 P.2d at 1014 (the rule construing ambiguities against the drafter applies "only if the court is otherwise unable to ascertain the parties' intent"); Wilburn v. Interstate Elec., 748 P.2d 582, 585-86 (Utah Ct.App.1988) (the doctrine of construing ambiguities against the drafter acts "as a kind of tie-breaker, used as a last resort by the fact-finder after the receipt and consideration of all pertinent extrinsic evidence has left unresolved what the parties actually intended"), cert. dismissed, 774 P.2d 1149 (Utah 1989). Here, the court applies "the presumption of arbitrability" to resolve the ambiguity and determine the parties' intent as a matter of law. Under the majority's reasoning, which, I believe, is consistent with controlling Supreme Court precedent, as long as a colorable argument can be made that a contract requires arbitration, the court is required to bypass the usual methods of contract interpretation and compel arbitration regardless of the parties' actual intent.
 
 
 49
 Although I believe the issue should ordinarily be resolved as a question of fact (applying the presumption only as a last resort), because the appellants here have not argued that the parties' intent was a disputed issue of material fact, precluding summary judgment, I believe the court has properly disposed of the issue as a matter of law in these cases. Therefore, I concur in the judgment.
 
 
 50
 Nevertheless, I am troubled by the direction the case law under the Arbitration Act has taken. What I believe was originally intended only to put arbitration agreements on the same footing as other contracts is now seen as a strong federal policy favoring arbitration agreements.
 
 
 51
 I believe part of the reason for the historical hostility towards arbitration agreements was the conventional wisdom that the litigation process was superior to alternative forms of dispute resolution, such as arbitration. The pendulum has now swung to the other extreme. Implicit in the Supreme Court's current position that "any doubts concerning the scope of arbitrable issues," including doubts about "the construction of the contract language itself," be resolved "in favor of arbitration," Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), is a preference for arbitration over litigation as a process for resolving disputes. Despite recent criticisms of the litigation process and the search for alternative means of resolving disputes, I believe the current antipathy towards litigation is as short-sighted as the former antipathy towards arbitration. Each has its place.
 
 
 52
 I am particularly troubled in cases such as this involving arbitration of employment disputes. The Arbitration Act expressly says it does not apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. Sec. 1. Presumably, insurance agents who are also qualified to sell securities are "workers engaged in foreign or interstate commerce." In making an exception for employment contracts, Congress recognized that arbitration provisions in such contracts are not really bargained for at all. Ordinarily, if a person wants a job, he must agree to the employer's terms, however onerous they may be. See Gilmer, 500 U.S. at 39, 111 S.Ct. at 1659 (Stevens, J., dissenting) (quoting Hearing on S.4213 & S.4214 before a Subcommittee of the Senate Committee on the Judiciary, 67th Cong., 4th Sess., 9 (1923)). The plaintiffs in these cases, however, have not argued that the exception for employment contracts contained in section 1 of the Arbitration Act applies to them, presumably because the Supreme Court's decision in Gilmer appears to have foreclosed that argument. See 500 U.S. at 25 n. 2, 111 S.Ct. at 1651 n. 2 (section 1's exclusionary clause does not apply to arbitration clauses contained in securities registration applications, which are contracts between the applicant and a securities exchange, not between an employee and his employer). I do not believe that an employer, such as Prudential, should be able to escape the strictures of the Arbitration Act indirectly, by requiring its employees to enter into contracts with third parties (such as securities exchanges) to arbitrate disputes with their employer, when it could not demand such a concession from the employee directly, in the contract of employment.
 
 
 53
 Nevertheless, I believe that the case law under the Arbitration Act is now so firmly established that a return to Congress's original intent will require congressional action.[1]
 
 
 
 *
 The Honorable Bruce S. Jenkins, Senior District Judge for the District of Utah, sitting by designation
 
 
 [1]
 These cases were assigned to the same panel, orally argued together with one counsel representing all Plaintiffs and another representing all Defendants, and involve the same legal issues. Therefore, we have consolidated our disposition of these cases herein
 
 
 [2]
 Hourigan's agreement--executed at an earlier time--was slightly different. It ended with: "... organizations with which I register, as indicated in Question 8." Hourigan App. at 23. Hourigan's agreement also left out "as may be amended from time to time."
 
 
 [3]
 Prudential cited only "9 U.S.C. Sec. 1 et seq." in its motions to compel arbitration and dismiss. Armijo App. at 8; Hourigan App. at 15. Presumably, Prudential's motions were based on 9 U.S.C. Sec. 4, which allows a district court to order the parties to proceed to arbitration under a written agreement to arbitrate the dispute in question. However, Prudential did not make any request for a stay of the proceedings pending arbitration, as allowed under 9 U.S.C. Sec. 3. It is unclear whether Prudential preferred to request dismissal rather than a stay pending arbitration or was simply unaware of the stay provisions of section 3
 
 
 [4]
 Our jurisdiction over Prudential's appeal results from the district court's July 22, 1994, denial of Prudential's motion for a rehearing of its original motion to compel arbitration. Pursuant to Fed.R.App.Proc. 4(a)(5), Prudential filed a timely Motion for Extension of Time for Filing Notice of Appeal on Sept. 20, 1994, which the district court approved on Nov. 2, 1994. Prudential then timely filed its Notice of Appeal on Nov. 10, 1994
 
 
 [5]
 After October 1, 1993, the NASD Code was amended to read as follows, with the new material shown in underlining:
 "Section 1. This Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company:
 (1) between or among members;
 (2) between or among members and associated persons;
 ....
 Section 8(a). Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) by and with such member, shall be arbitrated under this Code...."
 NASD Code Secs. 1, 8. We need not decide whether the October 1, 1993 version of the Code should apply to these claims which arose before that date but which were not filed in federal court until after that date because of our conclusion that even the February 1992 Code requires arbitration of these Plaintiffs' claims.
 
 
 [6]
 Section 1 provides for arbitration of disputes among various categories of persons. The relevant category for our purposes is that group discussed in subpart (2) of Section 1, "[disputes] between or among members and public customers, or others." See NASD Code Sec. 1 (emphasis added). Contrary to the Eleventh Circuit in Kidd, 32 F.3d at 519, we believe that the enumerated subparts (1), (2) and (3) of Section 1 apply to the entire Section, not merely to the insurance exception contained in that Section
 
 
 [7]
 Plaintiffs each concede in affidavits that they sold mutual funds, although they argue that they did so only while working for Pruco Securities Corp. See Hourigan App. at 54; Armijo App. at 46; Fuentes App. at 39. Although Pruco was listed as the "firm" on item 4 of Plaintiffs' Form U-4, Prudential was listed on item 9 as a firm with which Plaintiffs intended to maintain registration. Paragraph 8 on page 4 of the U-4 forms provides that the applicant "understand[s] and certif[ies] that the representations herein apply to all employers with whom I seek registration as shown in Items 4 and 9 of this form." Armijo's and Fuentes's Form U-4 also represented that Prudential and Pruco were "under common ownership or control." Furthermore, Pruco is a wholly owned subsidiary of Prudential and has no sales force or employees other than the agents and/or employees of Prudential. Hourigan App. at 61; Armijo App. at 50; Fuentes App. at 21-22
 
 
 [8]
 Plaintiffs do not assert on appeal that they are not associated persons of Prudential
 
 
 [9]
 The text of Section 1, quoted earlier in this opinion, excludes from the scope of arbitration "disputes involving the insurance business of any member which is also an insurance company."
 
 
 [1]
 Congress is not unaware of the problem. Legislation has been introduced in the 103d and 104th Congresses to invalidate existing agreements between employers and employees that require the mandatory arbitration of employment discrimination claims. See 141 Cong.Rec. S2271-72 (daily ed. Feb. 7, 1995) (statement of Senator Feingold). In introducing the most recent bill, S.366, Senator Feingold, the bill's sponsor, indicated that the proposed legislation
 closes a widening loophole in the enforcement of civil rights laws in our Nation. An entire industry--Wall Street--and a growing number of companies and firms in many other industries have been able to circumvent formal legal challenges to their unlawful employment practices in court--a right intended to be protected by the [civil rights] statutes this bill amends. Employers can tell current and prospective employees, "if you want to work for us, you'll have to check your rights as an American citizen at the door."
 Id. at S2272. The bill has been referred to committee.