Linda PALMER–SCOPETTA, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, Defendant.

No. 98–0734–CIV.

United States District Court,

S.D. Florida.

March 31, 1999.

Donna M. Ballman, Donna M. Ballman, P.A., North Miami Beach, Florida, David Auslander, Nemroff & Auslander, P.A., Miami, Florida, for plaintiff.

Marilyn J. Holifield, Holland & Knight LLP, Miami, Florida, for defendant.

## ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY THE ACTION

NESBITT, District Judge.

This cause comes before the Court upon Defendant's Motion to Compel Arbitration and Stay the Action, filed June 1, 1998 (D.E.# 9), and Plaintiff's Motion to Compel, filed July 10, 1998 (D.E.# 16).

On April 2, 1998, Plaintiff Linda Palmer–Scopetta commenced this action. Plaintiff formerly worked as an account representative for Defendant Metropolitan Life Insurance Company ("MetLife"). She alleges that MetLife discriminated against her on the basis of her gender. Plaintiff has asserted claims for sexual harassment under Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act of 1992 ("FCRA"), and the Miami–Dade County Code, retaliation claims under Title VII and the FCRA, and state law claims of intentional and negligent infliction of emotional distress.

MetLife moves to compel Plaintiff to arbitrate her claims and moves to stay this action until the parties have completed arbitration. According to MetLife, while Plaintiff worked for MetLife she registered with the National Association of Securities Dealers ("NASD"), an organization of which MetLife is a member. As part of her registration with NASD, Plaintiff completed a Uniform Application for Securities Industry Registration or Transfer ("Form U–4"). By virtue of the Form U–4 and the NASD Code of Arbitration Procedure, Plaintiff agreed to arbitrate all disputes arising out of her employment with MetLife. *See* Mot. to Compel (D.E.# 9), Ex. A (NASD Form U–4, executed by Plaintiff on October 19, 1992) & Ex. C (portions of NASD Code of Arbitration Procedure).

MetLife contends that each of Plaintiff's claims in this action is a dispute, claim, or controversy which Plaintiff is required to arbitrate pursuant to sections 1 and 8 of the NASD Code of Arbitration Procedure. MetLife therefore asserts that the Court should compel Plaintiff to arbitrate her claims.

Plaintiff does not dispute certain factual bases of MetLife's Motion: that she signed the Form U–4, that through the Form U–4 she agreed to be bound by the terms of the NASD Code of Arbitration Procedure, and that the Code of Arbitration Procedure by its terms provided for mandatory arbitration of claims arising out of employment or termination of employment. Plaintiff, however, contends that the Court should deny MetLife's request to compel arbitration on four grounds: (1) NASD no longer has mandatory arbitration in employment discrimination cases; (2) employers may not compel employees to waive their right to a judicial forum for Title VII claims; (3) this action arises in connection with a dispute involving MetLife's insurance business; and (4) a program which requires arbitration of Title VII claims may not require the employee to share costs, as NASD purportedly requires.

*(1) NASD's rule change does not preclude mandatory arbitration of Plaintiff's claims*

■ Plaintiff notes that on December 10, 1997, NASD submitted to the SEC for approval a rule which provides that "[a] claim alleging employment discrimination or sexual harassment in violation of a statute is not required to be arbitrated." D.E. # 17, at 2; SEC Release No. 34–39421 (December 10, 1997 proposed rule change) (attached as first exhibit to D.E. # 17). Because this action involves Title VII employment discrimination claims, Plaintiff contends that she is not required to arbitrate her claims.

MetLife, however, has submitted a copy of the rule in its final form, as approved by the SEC. The text of the rule clarifies that "[t]he amended rule will be effective on January 1, 1999, for claims filed on or after that date." NASD Notice to Members 98–56, Executive Summary (attached as ex. 1 to D.E. # 23); *see also* Notice 98–56, Effective Date ("NASD subsequently asked that the proposed rule change become effective on January 1, 1999. Accordingly, the rule change will apply to claims filed on or after the effective date of the rule change."); NASD Staff Opinion (attached to D.E. # 30) ("Q: When will the rule change be effective? A: It will be effective on January 1, 1999 for claims filed on or after that date.").

Plaintiff filed this action on April 2, 1998. Because she did not file her claims "on or after" January 1, 1999, the amended

rule does not apply to or preclude arbitration of her claims.

*(2) The Civil Rights Act of 1991 does not preclude mandatory arbitration of Title VII claims*

■ Plaintiff contends that the Civil Rights Act of 1991 precludes employers from compelling their employees to arbitrate Title VII claims.

The rules of one of the organizations with which Plaintiff registered, NASD, provide for arbitration of "any dispute, claim, or controversy ... arising out of the employment or termination of employment of associated person(s) with any member...." NASD Code of Arbitration Procedure, Part I, § 1 (D.E.# 9, ex. C). Further, Part II, § 8 of the NASD Code mandates that "[a]ny dispute, claim, or controversy eligible for submission under Part I of this Code ... arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code...." D.E. # 9, ex. D.

By their plain language, these provisions require Plaintiff to arbitrate her employment discrimination claims against MetLife. When an employee signs such an agreement, the employee will be compelled to arbitrate his or her statutory discrimination claims unless Congress intended to preclude a waiver of a judicial forum for the claim at issue. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991). Thus, Plaintiff's agreement to arbitrate her claims in enforceable unless Congress, through "the text of [the act at issue], its legislative history, or an 'inherent conflict' between arbitration and the [act's] underlying purposes ...," *Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652, evinced an intent to preclude waiver of a judicial forum.

Plaintiff contends that the legislative history of the Civil Rights Act of 1991 demonstrates that Congress intended to preclude application of the arbitration clause at issue in this case to Title VII claims. In support of this proposition, Plaintiff relies on the Ninth Circuit's decision in *Duffield v. Robertson,* 144 F.3d 1182 (9th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 445, 142 L.Ed.2d 399 (1998) *and* 119 S.Ct. 465, 119 S.Ct. 465, 142 L.Ed.2d 418 (1998). In *Duffield,* the court held that "Congress intended in enacting the Civil Rights Act of 1991 to preclude the compulsory arbitration of Title VII disputes." *Id.* at 1202–03.

All other circuits which have considered this issue, however, have disagreed with the Ninth Circuit and have instead concluded that Title VII claims brought after enactment of the Civil Rights Act of 1991 may be subject to compulsory arbitration agreements. *See Rosenberg v. Merrill Lynch,* 170 F.3d 1, 4 (1st Cir.1999) ("Title VII of the Civil Rights Act of 1964, as amended by the 1991 CRA, does not, as a matter of law, prohibit pre-dispute arbitration agreements."); *Rosenberg,* 170 F.3d at 7 ("We hold that neither the language of the statute nor the legislative history demonstrates an intent in the 1991 CRA to preclude pre-dispute arbitration agreements."); *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 362 (7th Cir.1999) ("Title VII claims can be subject to mandatory arbitration"); *Koveleskie,* 167 F.3d at 365 ("We respectfully disagree with the Ninth Circuit on this issue, and instead concur with the majority of circuits that have held that Congress did not intend Title VII to preclude enforcement of pre-dispute arbitration agreements...."); *Seus v. John Nuveen & Co., Inc.,* 146 F.3d 175, 182–83 (3d Cir.1998), *petition for cert. filed,* —— U.S. ——, 119 S.Ct. 1028, 142 L.Ed.2d 38, (1999) (No. 98–719); *Patterson v. Tenet Healthcare, Inc.,* 113 F.3d 832, 837 (8th Cir.1997) ("Thus, we agree with those post-*Gilmer* decisions which have ruled that Title VII claims, like ADEA claims, are subject to individual consensual agreements to arbitrate.... Moreover, the arbitrability of Title VII claims finds support in the Civil Rights Act of 1991...."); *Cole v. Burns Int'l Security Servs.,* 105 F.3d 1465 (D.C.Cir.1997); *Austin v. Owens–Brockway Glass Container, Inc.,* 78

F.3d 875, 880 (4th Cir.) ("The language of [The Civil Rights Act of 1991 and the ADA] could not be any more clear in showing Congressional favor towards arbitration."), *cert. denied,* 519 U.S. 980, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996); *see also Bradford v. KFC National Management Co.,* 5 F.Supp.2d 1311 (M.D.Ala.1998).

Additionally, the Eleventh Circuit in *Kidd v. Equitable Life Assurance Society of the United States,* 32 F.3d 516 (11th Cir.1994), determined that an employee's pre-Civil Rights Act of 1991 Title VII claims [1] are subject to compulsory arbitration under the NASD Arbitration Code if the employee signed a Form U–4 application substantially similar to that which Plaintiff in this action signed. Although the *Kidd* court did not consider claims brought after enactment of the Civil Rights Act of 1991, the Eleventh Circuit recently considered whether Title VII claims brought after enactment of the Civil Rights Act of 1991 may be subject to a mandatory arbitration agreement. *See Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054 (11th Cir.1998).[2]

In *Paladino,* the plaintiff sued her former employer under Title VII. *See id.* at 1055. In an employment agreement, the plaintiff had agreed to arbitrate " 'any controversy or claim arising out of or relating to ... [her] employment or the termination of ... [her] employment.' " *Id.* at 1057 (quoting arbitration agreement). The Eleventh Circuit reaffirmed the proposition that Title VII claims are "generally arbitrable" so long as "the arbitration clause permits relief equivalent to court remedies." *Paladino,* 134 F.3d at 1062; *see also id.* ("Title VII claims are no exception to this rule.").[3]

The Court agrees with the majority of circuit courts which have considered this issue. In accordance with those court's decisions and the Eleventh Circuit's rationale in Kidd and *Paladino,* the Court concludes that the Civil Rights Act of 1991 does not preclude mandatory arbitration of an employee's Title VII claims when the employee, through a Form U–4, has agreed to arbitrate such claims.

(3) *This action does not arise in connection with a dispute involving MetLife's insurance business*

■ Part I, section 1 of the NASD Code of Arbitration Procedure excepts from ar-

---

1. In *Kidd* the objectionable conduct occurred in 1989, *see* 32 at 518 n. 2, and plaintiffs filed suit in 1993, *see id.* at 518. The Civil Rights Act of 1991, which took effect on November 21, 1991, *see Andrews v. Lakeshore Rehabilitation Hosp.,* 140 F.3d 1405, 1409 n. 9 (11th Cir.1998), does not apply to pre-enactment conduct, *see, e.g., Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 313, 114 S.Ct. 1510, 1520, 128 L.Ed.2d 274 (1994) (Section 101 of the Civil Rights Act of 1991 "does not apply to preenactment conduct."); *Landgraf v. USI Film Prods.,* 511 U.S. 244, 286, 114 S.Ct. 1483, 1508, 128 L.Ed.2d 229 (1994) (section 102 of the Civil Rights Act of 1991 does not apply to "cases arising before its enactment"); *Tomasello v. Rubin,* 167 F.3d 612, 619 (D.C.Cir.1999) (under the Civil Rights Act of 1991, "an award of compensatory damages for preenactment conduct would have an impermissible retroactive effect"); *Dombeck v. Milwaukee Valve Co.,* 40 F.3d 230, 235 (7th Cir.1994). Therefore, this Court will assume that in *Kidd* the Eleventh Circuit did not consider the effect of the Civil Rights Act of 1991 on its conclusion that Form U–4 agreements to arbitrate Title VII claims are enforceable.

2. Because the objectionable conduct occurred between 1992 and 1994, *see id.* at 1055–1056, the amendments to Title VII contained in the Civil Rights Act of 1991 applied to Plaintiff's claims, *see supra* note 1, and the court was required to consider the question of arbitrability in light of those amendments.

3. Although the court in *Paladino* concluded that Title VII claims are "generally arbitrable ...," 134 F.3d at 1062, the court refused to compel arbitration because a provision of the arbitration agreement precluded the plaintiff's recovery of relief available under Title VII. *See Paladino,* 134 F.3d at 1062. Plaintiff in this case has not suggested that any portion of her arbitration agreement with MetLife precludes recovery of relief available under Title VII, and therefore *Paladino,* does not preclude an Order compelling her to arbitrate her claims.

bitration "disputes involving the insurance business of any member which is also an insurance company." Plaintiff contends that she does not have to arbitrate her claims because they involve MetLife's insurance business.

In her Complaint, Plaintiff alleges that she "was terminated because she made a verbal and written internal complaint of sexual harassment and sexual discrimination. . . ." Compl. ¶ 6. She claims that she was subjected to numerous incidents of sexual harassment, which allegedly constituted a hostile environment and disparate treatment on the basis of her gender. *See* Compl. ¶¶ 7, 10–26.

Plaintiff also alleges that MetLife's pretextual reason for her termination was that she wrote "a letter to potential clients where she mentioned the possibility of mortgage disability insurance." Compl. ¶ 8. After she wrote the letter, Plaintiff was "warned not to include such language in future letters because . . . it could not be used because of the Insurance Company's legal problems." *Id.*

Based solely on the fact that MetLife's allegedly pretextual reason for firing her was that she wrote a letter mentioning disability insurance, Plaintiff contends that this action, which involves only sexual discrimination and related claims, is a dispute based on MetLife's insurance business.

The Court must interpret the insurance business exception "narrowly." *Armijo v. Prudential Ins. Co. of America,* 72 F.3d 793, 800 (10th Cir.1995). Plaintiff's discrimination claims concern MetLife's "role as an employer rather than as an insurer." Id. They are claims involving a dispute over MetLife's personnel practices, not its insurance business. Therefore, Plaintiff's claims do not fall within the insurance business exception contained in Part I, section 1 of the NASD Code of Arbitration

Procedure. *See id.; Kidd v. Equitable Life Assurance Society of the United States,* 32 F.3d 516, 519 n. 5 (11th Cir. 1994) ("Equitable's personnel practices do not constitute a dispute over its 'insurance business.' ").

(4) *Plaintiff has not directed the Court to a fee-sharing provision which would invalidate the arbitration clause*

■ Plaintiff contends that the Court should invalidate the arbitration clause because it purportedly requires her to pay at least half of the arbitration costs and to pay a "hefty filing fee." D.E. # 17, at 11. Plaintiff, however, has not submitted evidence demonstrating that she will be required to pay half the arbitration costs and a "hefty" filing fee.

The only portions of the NASD Code of Arbitration Procedure which either party submitted are attached to MetLife's Motion to Compel, D.E. # 9. Those portions of the Code do not reveal that Plaintiff will be required to pay any portion of the arbitration costs. In fact, decisions addressing issues concerning arbitration under NASD rules, including the only decision Plaintiff cited which included any discussion concerning arbitration under NASD rules, have noted that "under . . . NASD rules, it is standard practice in the securities industry for employers to pay all of the arbitrators' fees." *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 366 (7th Cir.1999); *Cole v. Burns International Security Servs.,* 105 F.3d 1465, 1483 (D.C.Cir.1997) (cited by Plaintiff in D.E. # 17, at 10–11).

The United States Courts of Appeals for the Tenth and Eleventh Circuits have suggested that if a mandatory arbitration agreement requires an employee to pay a portion of the arbitrator's fees, then that agreement is unenforceable. *See Shankle v. B–G Maintenance Management of Colorado, Inc.,* 163 F.3d 1230, 1233, 1235 (10th Cir.1999); *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, 1062 (11th Cir.1998).[4] Another court held that

---

**4.** Although the cited portion of *Paladino* is

labeled a "Concurring opinion", it represents

"it is unacceptable to require [an employee] to pay arbitrators' fees," *Cole v. Burns Int'l Security Servs.*, 105 F.3d 1465, 1484 (D.C.Cir.1997), and therefore a clause which does not specifically provide that the employer will pay an arbitrator's fees must be interpreted as imposing those costs on the employer, *see id.* at 1484–85 ("Arbitration will occur in this case only because it has been mandated by the employer as a condition of employment.... In such a circumstance ... arbitrators' fees should be borne solely by the employer.").

None of those decisions, however, dealt with a NASD arbitration clause, and all dealt with clauses which required an employee to pay a substantial portion of the arbitration costs or steep filing fees with no possibility of waiver for financial hardship. *See Shankle,* 163 F.3d at 1231–34 (In employment contract, employee agreed to "be responsible for one-half of the arbitrator's fees...." The parties were required to pay arbitrator $6000.00 deposit, and the court estimated that employee would have had to pay between $1,875.00 and $5,000.00 in arbitration fees.); *Paladino,* 134 F.3d at 1062 (American Arbitration rules required employee to pay $2,000.00 filing fee); *Cole,* 105 F.3d at 1465 ("There is no indication in the [American Arbitration Association]'s rules that an arbitrator's fees may be reduced or waived in cases of financial hardship. These fees would be prohibitively expensive for an employee like Cole...."). Absent evidence that NASD's Code of Arbitration Procedure will require Plaintiff to pay such fees and costs, the Court will not refuse enforcement of the arbitration clause.

If, however, Plaintiff becomes liable for substantial fees and costs, this likely will constitute "a legitimate basis for a conclusion that the [arbitration] clause does not comport with statutory policy." *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, 1062 (11th Cir.1998). If that occurs, Plaintiff may present to this Court her contention that the referral to arbitration or the arbitration award is inconsistent with the Civil Rights Act of 1991. *See Rosenberg v. Merrill Lynch,* 170 F.3d 1, 15–16, 1999 WL 80964, *15, No. 98–1246 (1st Cir. Feb. 24, 1999) ("[I]f unreasonable fees were to be imposed on a particular employee, the argument that this was inconsistent with the 1991 CRA could be presented by the employee to the reviewing court."); *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 366 (7th Cir. 1999) (same).

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant's Motion to Compel Arbitration and Stay the Action, filed June 1, 1998 (D.E.# 9), is **GRANTED.**

2. The parties shall arbitrate this action in accordance with their agreement and the NASD Code of Arbitration Procedure.

3. This action is **STAYED** pending the parties' arbitration of this matter, On the first day of each month Plaintiff shall file a brief status report indicating the progress of the arbitration process. Failure to file a status report by the fifth day of each month may result in the imposition of appropriate sanctions, including but not limited to dismissal of this matter.

4. Plaintiff's Motion to Compel discovery, filed July 10, 1998 (D.E. # 16), is **DENIED.**

the opinion of two of the panel's three Judges

(Judges Cox and Tjoflat).